HEATH v. HUFFHINES.

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 2, 1912. Rehearing Denied Dec. 7, 1912.)

1. VENDOR AND PURCHASER (§ 3*)—CONSTRUCTION AND OPERATION OF CONTRACT—"OPTION"—"CONTRACT OF SALE."

A written agreement, providing that an owner of land bound himself to sell it to another for a specified sum to be paid as therein provided, and that if the vendor's title was not good the down payment should be refunded, but if he should furnish a good and sufficient warranty deed and abstract of title, and the other party should fail or refuse to carry out the contract, the down payment should be forfeited to the vendor, was an enforceable "contract of sale," and not an "option"; an agreement by the purchaser to take the land being implied, and the provision for the forfeiture of the down payment not rendering the contract an option in the absence of an agreement by the vendor to accept such sum as his liquidated damages.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 3; Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 2, pp. 1531–1534; vol. 8, p. 7616; vol. 6, pp. 5000–5002; vol. 8, p. 7739.]

2. BROKERS (§ 99*)—PERSONAL LIABILITY ON CONTRACTS.

A real estate broker executing and delivering a contract for the purchase of land in his own name is bound thereby, although he was in fact acting for others.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 140, 141; Dec. Dig. § 99.*]

3. BROKERS (§ 88*) — ACTIONS FOR COMMISSIONS—EVIDENCE—SUFFICIENCY.

Where a person sued for broker's commissions alleged and produced evidence tending to show that by his agreement with the broker he was to pay no commission unless an actual sale of the land was completed, the title passed, and payment made, and there was evidence that he did everything he could except institute legal proceedings to secure the consummation of the sale, a peremptory instruction for the broker should not have been given, since the evidence did not show beyond dispute that the failure to consummate the sale was due solely to the owner's fault.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 121–130; Dec. Dig. § 88.*]

4. BROKERS (§ 60*)—COMPENSATION—SUFFICIENCY OF SERVICES.

Notwithstanding the general rule that a broker employed to sell land earns his commission when he procures a purchaser ready and able to buy on the terms offered who enters into an enforceable contract therefor, a special agreement that no commissions shall be paid unless the sale is completed, the title transferred, and payment made, is valid.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 91; Dec. Dig. § 60.*]

5. BROKERS (§ 60*) — COMPENSATION — FAILURE TO COMPLETE TRANSACTION.

Where a broker agrees that he shall receive no commissions until a sale is actually consummated by a transfer of the title and payment of the purchase price, he cannot recover, in the absence of such consummation, without showing that the failure to complete the sale was due to the owner's fault.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 91; Dec. Dig. § 60.*]

Appeal from District Court, Johnson County; J. B. Haynes, Judge.

Action by W. C. Huffhines against E. N. Heath. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Phillips & Bledsoe and H. P. Brown, both of Cleburne, for appellant. Walker & Baker and S. C. Padelford, both of Cleburne, for appellee.

CONNER, C. J. Appellee sued appellant to recover an alleged balance of $550 claimed to be due as commissions for procuring one A. N. Evans as a purchaser for 298½ acres of appellant's land in Johnson county, Tex.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

The plaintiff alleged his employment and a specific agreement by appellant to pay him $750 as a commission for procuring a purchaser of said land at $90 per acre, and that he procured A. N. Evans as such purchaser, with whom appellant made and entered into an enforceable contract of purchase about March 9, 1911. Plaintiff further alleged that Heath had paid him the sum of $200 of the agreed commission, but had refused to pay the remainder or to have the contract of sale carried into effect, and had rendered it impossible to secure the specific performance of the same because of the fact that he had sold the land to another party. Appellee answered by a general denial, and specially, among other things not deemed material to notice, that the alleged contract with Evans was not an enforceable obligation on Evans' part to purchase, but an option merely, which Evans failed to accept; that under the terms of the agreement between the plaintiff and defendant plaintiff was only entitled to the alleged commission of $750 upon the condition that the land referred to was actually sold and the sale completed by the delivery of deed on the part of the defendant and the payment of purchase money on the part of the proposed purchaser. After the introduction of the evidence by the parties, the court peremptorily instructed the jury to find for the plaintiff, and judgment was entered accordingly.

[1] The contract with Evans made part of the pleadings and read in evidence is as follows:

"This memorandum of agreement made and entered into this day by and between E. N. Heath of Johnson county, Texas, party of the first part, and A. N. Evans of Tarrant county, Texas, party of the second part, witnesseth: That the said E. N. Heath has this day agreed, binds and obligates himself to sell to A. N. Evans or his assigns 298½ acres of land situated in Johnson county, Texas, about four and a half or five miles north and east of the city of Cleburne for the sum of ninety dollars per acre to be paid for as follows: One-third of the purchase price to be paid on or before April 1, 1911, bearing interest at seven per cent., and the remainder to be paid in three equal annual payments, all deferred payments to bear interest at the rate of eight per cent. per annum. The said Heath agrees to furnish a complete abstract of title and to convey the above-described land to the said Evans or his assigns by a good and sufficient warranty deed and to give possession of the same upon delivery of the deed, subject, however, to the occupancy of the tenant for the year 1911, and as earnest money, and as a part of the cash consideration above mentioned, the said A. N. Evans has this day paid to the said Heath $700 cash, and the said Heath has accepted the same as a part of the cash consideration. It is agreed and understood

that should there be any defect in said title, that the said Heath shall have a reasonable time to cure said defect, and in case said title is not good the seven hundred dollars this day paid shall be refunded to the party of the second part, but should the said Heath furnish a good and sufficient warranty deed and abstract of title as above set forth, and the said Evans fails or refuses to carry out his part of this contract, the said seven hundred dollars shall be forfeited to the party of the first part.

"Witness our hands this the 9th day of March, A. D. 1911.

　　　　　　　　　　　　his
"E. N. X Heath, Party of the First Part.
　　　　　mark
"A. N. Evans, Party of the Second Part.

"Witness: Minnie L. Ramsey, W. C. Huffhines."

The evidence shows that the appellee, Huffhines, was a real estate agent in the city of Cleburne with whom appellant had listed for sale the land in question; that Evans was a real estate agent of the city of Ft. Worth desiring to purchase lands for Ft. Worth parties and visited Cleburne for that purpose; that it was agreed between Evans and Huffhines that, if Huffhines would divide his commissions, he (Evans) would make his purchases through Huffhines; that thereupon they called in appellant, visited his farm, and finally executed the instrument hereinbefore set out. It is further undisputed that neither Evans nor the Ft. Worth parties for whom he was acting ever completed the purchase of appellant's land, nor did appellant institute any legal action for the enforcement of the contract made with Evans.

Appellant's principal contention seems to be that the contract with Evans is in form but an option, and hence that under well-settled rules of law the appellee was not entitled to commissions. Appellant cites in support of this contention a number of authorities that we think are to be distinguished from the one before us, though this, perhaps, cannot be said of the case of Wilson v. Ellis, 106 S. W. 1152. Construing the contract in question, however, in the light of the authorities as a whole and of the record before us, we think appellant's contention must be overruled.

[2] Evans executed and delivered the contract in his own name and cannot be heard to say that he was not bound thereby, notwithstanding he was in fact acting for others. See Heffron v. Pollard, 73 Tex. 96, 11 S. W. 165, 15 Am. St. Rep. 764. So, too, while the contract fails in specific terms to bind Evans to take the land, this must be implied. See Griffith v. Bradford, 138 S. W. 1072. Nor do we think the provision for the forfeiture of the $700 to Heath in event Evans failed to carry out his part of the contract necessarily rendered the contract optional. This in effect constituted but a

penalty and was unaccompanied by any agreement on the part of Heath that the sum so to be forfeited should be accepted, as in the case of Moss & Raley v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847, by our Supreme Court. In the original opinion in that case it was said: "We have numerous decisions holding, although there is a stipulation in the contract of this character, that payment of a fixed sum of money as liquidated damages does not affect the contract for sale of the land, but that the seller can enforce specific performance"—citing with approval Hemming v. Zimmerschitte, 4 Tex. 159; Williams v. Talbot, 16 Tex. 1; Vardeman v. Lawson, 17 Tex. 11; Bullion v. Campbell, 27 Tex. 653. It is true on rehearing in that case it was held that the contract there under consideration was an option because of the specific agreement on the part of the seller that the sum to be forfeited was to be "accepted by said seller as liquidated damages for such injury or damage as the seller may suffer by reason of nonperformance of this contract on the part of the purchaser"; but in that connection it was said that but for such agreement for acceptance the original opinion would have been correct. The contract now under consideration does not bind Heath to the acceptance of the $700 cash paid on the contract as the full measure of his damage in event of Evans' refusal to comply with his part of the contract, nor does the contract fall within any definition of the term "option" that we have been able to find, and, as indicated, we think it was an enforceable contract as against Evans. We are the more inclined to this construction in view of the undisputed evidence to the effect that at the time of its execution both Evans and appellant, Heath, expressly declared their purpose to enter into an enforceable contract of sale and not an option. The parties themselves having adopted this construction of the contract, we think it should be here maintained.

[3] We are of opinion, however, that for another reason there was error as assigned in giving the peremptory instruction. As before indicated, the defendant, E. N. Heath, specially pleaded that "it was expressly understood and agreed between plaintiff and defendant that this defendant was not to pay and would not pay any commission until an actual sale of the land was made and completed and the title of the land passed by executed deed of conveyance to the purchaser and the purchaser complied with the terms of sale by payment of the purchase money and the execution of notes and papers in accordance with the stipulations of a contract that might be made." While denied by the appellee, Huffhines, the appellant, Heath, testified to the effect that the $200 paid to Huffhines out of the cash payment made by Evans was to be returned to him (Heath) in event Evans failed to complete the sale, and he further testified that "the $750 commission was to be paid whenever the trade was closed and the money paid and the deed made." Mr. Evans testified on the subject, among other things, that "the remaining part of the commission, $550, was to be paid by Mr. Heath to Mr. Huffhines out of the purchase money when the trade was closed and the deed made."

[4] While the general rule undoubtedly is that a real estate broker employed to sell land earns his commission when he procures a purchaser who is ready and able to buy on the terms offered, and who enters into an enforceable contract therefor, yet we know of no principle of law that forbids the making of a specific contract such as indicated by the appellant's allegations and testimony above set out.

[5] If the agreement was, as alleged, that appellee was only entitled to commissions in the event the sale was actually consummated, then appellee was not entitled to recover without showing that the failure on Evans' part to consummate the sale was due to appellant's fault, and this cannot be said in the light of the present record to be indisputably so. Owen v. Kuhn, Loeb & Co., 72 S. W. 432. The contract which was executed on the 9th of March, 1911, provided in effect that one-third of the agreed purchase price was to be paid on or before April 1st following and purchase money notes then given for the remainder. The evidence tends to show that after the execution of the contract not only Heath, but also Huffhines, interested themselves in the effort to secure the final consummation of the sale as late as in June, 1911. Heath testified, among other things, that on the 11th day of April he and Mr. Huffhines went to Ft. Worth, Heath paying Huffhines' expenses, and called upon Evans and arranged for a meeting with Mr. Capps, who it seems was the Ft. Worth party for whom Evans was acting; that Mr. Capps then stated "that he did not instruct Evans to buy the property, but only to take an option on it, but that he would go to Cleburne the next week, and if it suited him to take the property he would do it, and if it didn't he would not." Heath further testified that on the 6th day of June, 1911, he again went to see Mr. Evans, who again called on Mr. Capps, and who reported that Capps said he was not going to take the land. It is not pretended that Evans at any time had the purpose of himself completing the sale, and the evidence fails to show what further appellant could have done in order to secure its consummation, without the institution of legal proceedings, and this hazard he was not bound to undertake if his special plea with reference to the payment of commissions was true.

It follows that the issue presented by the special plea and evidence was for the jury, and that the court erred in giving the per-

emptory instruction and in failing to give appellant's special instruction No. 3 submitting the issue of the specific contract, to the rejection of which complaint is made in the tenth assignment.

Judgment reversed, and cause remanded.