# HOPKINS v. SETTLES.

No. 3852.    Opinion Filed May 18, 1915.

(149 Pac. 890.)

1.    BROKERS—Commission—Right—Contract. Questions arising out of a claim by a real estate broker for commissions or compensation generally depend upon the contract or understanding between him and the owner, under which the broker acts. The owner has the right to stipulate that he will not pay, or be in any way obligated to pay, for services in relation to the sale of his land, except in the event such sale is fully and finally consummated.

2.    BROKERS—Commission—Right—Performance of Contract. Where the owner of a farm makes a net price to a real estate broker, which he is willing to take for his land, but refuses to be bound for any commission, or to be obligated in any way, except for any sum the broker may obtain in excess of the net price, and then only in the event the sale goes through and is finally consummated, the price paid, and the title passed, such broker is not entitled to recover compensation from the owner by merely finding a purchaser ready, willing and able to buy, and procuring from him a written agreement to take the land, where such purchaser fails to live up to his agreement, or to take and pay for the land.

3.    TRIAL—Failure to Admonish Jury—Waiver of Objection. Where after a civil cause has been submitted to it, the jury separates, and the individuals go to their homes for dinner, and mingle on the way with other persons, without having been admonished by the court, as required by section 5006, Rev. Laws 1910, "not to converse with, or suffer themselves to be addressed by, any other person, on any subject of the trial," and such fact is known to one of the parties, when it occurs, but the court's attention is not called to the matter, and the jury reassembles and considers its verdict in the afternoon, separates for supper, then reassembles, and at an evening session returns into court, in the presence of such party, its verdict, without objection upon his part, or notice to the court of the irregularity, and where no wrongdoing or other irregularity is claimed, such party will be deemed to have waived the irregularity. He has no right to remain silent, in possession of knowledge of the facts, and speculate upon the chances of a favorable verdict, and after he is disappointed be heard to complain.

(Syllabus by Brewer, C.)

Form 26

*Error from District Court, Kingfisher County;*

*James B. Cullison, Judge.*

Action by H. E. Hopkins against Alvin E. Settles. Judgment for defendant, and plaintiff brings error. Affirmed.

*D. K. Cunningham,* for plaintiff in error.

*F. L. Boynton,* for defendant in error.

BREWER, C.  Plaintiff in error, Hopkins, a real estate agent, brought this suit in the court below to recover from defendant, Settles, the sum of $500, alleged to be due as commission or compensation for his services in connection with the sale of defendant's half section of land and certain rights in an Indian lease, together with 80 acres of growing corn.  At a trial of the case the jury returned a verdict for defendant, and plaintiff brings this proceeding in error.

Whatever conversation or understanding had between these parties relative to the sale of the farm was oral.  It seems to be plaintiff's contention that he was employed by defendant to find a purchaser for the land; that he was to be paid as compensation or commission for his services for bringing the parties together and consummating a valid agreement of sale all over and above the sum of $16,500; that he could get a purchaser to agree to pay for the property; that he did find a purchaser who entered into a valid written costract with defendant, in which it was agreed that he was to pay $17,000 for the property, $1,000 of said sum to be paid as earnest money, $1,000 more in 20 days, another $1,000 by the 1st of September, and $7,000 on the 1st of October, at which time a mortgage was to be executed by the purchaser to defendant for the remainder of the purchase price; and that, since he brought the parties together in an enforceable contract for the sale of the land, he

was entitled to the $500 embraced within the terms of said contract.

The contention of defendant is that he merely made to plaintiff a price upon his land that would be satisfactory to him; that he did not employ plaintiff to find a purchaser, and did not agree to pay or become liable in any way to pay any commission, brokerage, or compensation in the matter; that he had told plaintiff, if he brought about a sale and he got $16,500 for his property, plaintiff could have as his own any additional sum he might get out of the purchaser; that, while the additional sum of $500 was added to the agreed purchase price in the contract, yet the agreement was that this sum would merely be turned over to plaintiff in case the sale was completed and went through; that the sale did not go through; that none of the deferred payments were made; that the purchaser became discouraged, and would not carry out his contract to buy the land, and did not do so.

Some attempt is made to show that the purchaser went to the bank at the time one of the later payments was to be made and asked if the deeds had been deposited, and was told that they had not. Evidence both for and against the idea that defendant breached his contract to convey is presented; but from a careful reading of the evidence there is nothing to the contention. It is clearly manifest that the purchaser had abandoned all intention of taking and paying for the farm, and that defendant was not only willing, but would have been very glad, had he taken the land.

1. The first proposition presented for reversal is based on the claim that the verdict is not sufficiently supported by the evidence. We will examine this point first. As to some phases of the matter as between plaintiff and defendant there is little conflict in the evidence. As to other phases there is much conflict; and, when the record is carefully studied, it gets down

to the point as to the agreement between the parties relative to when there would be any obligation upon defendant's part to pay the $500. In other words, was it the agreement that plaintiff's money would be earned when he brought the parties together in a contract of sale and incorporated his fee in the amount named, or was he entitled to the fee only when the sale went through, that is, when defendant had parted with his land and received satisfactory consideration in money and notes for it? On this point the evidence is in conflict. Plaintiff, testifying in his own behalf and at length as to just what he did in bringing the parties together and getting them to sign the contract, made, as relating to the payment of his fee, the following statement:

"It was also agreed between Settles, the defendant, and me, that as soon as that $1,000 was paid to Settles by Van Meter, the first payment on the land, that then I should get my $500."

Defendant, testifying in his own behalf, was asked:

"Did you agree with Mr. Hopkins that you would pay him a commission of $500 for getting a signature to this contract, regardless of whether the deed and mortgages were exchanged or not? A. No, sir; I never agreed to pay Hopkins a cent in my life for nothing, only this $500 that he sold the place for; that he told me he had sold it for over and above my price, and I told him that I would turn it over to him when Van Meter paid it to me. Q. Do you mean when he paid the first $1,000? A. No, sir; when Van Meter paid me for the place, I was to turn over the difference to Hopkins."

Settles further testified as to just what was said about the $500 fee as follows:

"He says, 'We will just go ahead and close up this deal, and when Van Meter pays for the place, why you can give me a check for the $500.' That is what he had sold it for, over and above my price; and I told him that would be all right, and whenever Van Meter paid me, of course, he would get his

money, whatever was coming to him. That is all that ever passed between Hopkins and I about these commissions from first to the last."

As will be seen from the quotations from the evidence, there was a wide misunderstanding between the parties as to this, which seems to have been the vital point in the case. The jury accepted defendant's version of the matter, and, as he had not been paid for the place, as the sale had not gone through, he was relieved of any obligation to pay plaintiff's fee. We have no right to disturb the verdict.

Some complaint is made relative to the court's instructions to the jury, both as to two or three of the instructions given and some that were refused. Perhaps the most earnest objection goes to instruction No. 6, which is as follows:

"You are further instructed that in this case defendant claims or contends that he was only to pay commission in case the sale went through. If you can find by a preponderance of the evidence that the bargain agreed upon between the plaintiff and defendant was that commission was only to be paid in case the whole transaction went through, as provided by the terms of the contract of sale, the plaintiff is not entitled to recover, and it will be your duty to find for the defendant."

In the light of the contentions of the parties and the evidence introduced in relation thereto, this instruction was substantially correct; in fact, while many instructions were given, fairly covering plaintiff's theory of the case, this is the one special instruction that submitted to the jury the defendant's theory. If defendant's theory was correct, he was under no obligation to pay plaintiff the amount claimed, and this instruction merely tells the jury so. While the case of *Scully v. Williamson,* 26 Okla. 19, 108 Pac. 395, 27 L. R. A. (N. S.) 1089, Ann. Cas. 1912A, 1265, is relied upon as the law applicable to plaintiff's theory, yet it also recognizes defendant's theory in the following language:

"Had the defendant embodied in his contract of employment with the corporation a stipulation that he should not be liable for any commission unless a sale was finally consummated and the property transferred, then the fact that the corporation, although it made effort to have the purchaser carry out his contract, failed to secure the performance thereof, would be fatal to plaintiff's right of recovery; but it is not made to appear by the pleadings of either party, or by evidence, that there was such stipulation in the contract of employment."

See, also, the following cases: *Ford v. Brown,* 120 Cal. 551, 52 Pac. 817; *Seattle Land Co. v. Day,* 2 Wash. 451, 27 Pac. 74; *Larson v. Burroughs,* 131 App. Div. 877, 116 N. Y. Supp. 358; *Robertson v. Vasey,* 125 Iowa, 526, 101 N. W. 271; *Burnett v. Edling,* 19 Tex. Civ. App. 711, 48 S. W. 775.

It will be borne in mind that questions arising out of a claim made by real estate men for commissions generally depend upon the contract or understanding between the parties under which the broker acts. This is not a case of the ordinary listing with a real estate agent upon commission, either agreed upon or implied, in which the broker would have earned his commission by finding a purchaser able, ready, and willing to buy at the price the broker was authorized by the owner to sell for, and had consummated a binding contract of sale between the parties, which would have completed the broker's services and entitled him to his pay, as has been frequently held. *Scully v Williamson, supra.* That is, that is not this case, if defendant's theory is true. It would be, substantially, if plaintiff's theory is true; and the court devoted several instructions to a very clear, and we think reasonably accurate, explanation of the law applicable, in case the jury should believe plaintiff's theory. We think that, regardless of the instructions requested by plaintiff and refused, the law upon his case, upon his own theory, was fairly submitted to the jury.

2. Another point is made which is based upon the alleged misconduct of the jury. To be specific, it was charged in the

motion for a new trial, supported by affidavit signed by plaintiff; that after the case had been submitted to the jury it returned to its room to consider of its verdict, and remained there from some time in the morning until the noon hour; at which time the sheriff came along and told the sworn bailiff in charge of the jury to let them separate and go to their various places of abode for their dinners, and that they did so; that after dinner they reassembled in the jury room with their bailiff and considered of their verdict until the supper hour; at which time they again separated and went to their suppers; that they mingled with other people on the streets and in business houses and elsewhere while so separated; that after supper they returned to their room, considering the case until about 10 o'clock at night, when they came into open court in charge of their bailiff and rendered a verdict in the case; that prior to their separation they had not been admonished by the court not to discuss the case. The record shows that the parties were all present by counsel, but no objection was made to the return of the verdict, or to it after its return; nor was the irregularity called to the attention of the court, so far as the record shows, in any way, until some time after, when plaintiff attached his affidavit to a motion for a new trial, previously filed.

Section 5006, Rev. Laws 1910, provides that when the jury is allowed to separate, either during the trial or after the case is submitted, they should be admonished by the court that it is their duty not to converse with, or suffer themselves to be addressed by, any other person on any subject of the trial, and that it is their duty not to form or express an opinion thereon until the case is finally submitted to them. In this instance the case had been finally submitted to the jury, and the only objection relevant is that they were not admonished by the court not to converse with others or to permit others to converse with them on the subject of the trial. This statute means what it says, and should be enforced. The conduct of the jury in separating without the admonition was an irregularity which,

under some circumstances might require a reversal of the case; but we are of the opinion that it should not, under the facts presented here. We gather from plaintiff's sworn statement, in which he states matters of fact as though personally known to him, that he was well aware at the noon hour of this irregular separation of the jury, and was probably equally well aware that the court did not know it; yet no complaint was made in the afternoon. He seems also to have been well aware of their separation at the supper hour; yet no complaint was made, nor was any made when they came in with their verdict, or afterwards, until his motion for new trial was filed. No complaint is made of any other improper conduct on the part of the jury, save as to the separation without the court's admonition. With the knowledge plaintiff had, it appears evident that he attached so little importance to the incident that he did not think it worth while to call the attention of the court to it and demand a dismissal of the jury for that cause, or else, if he did attach importance to it, or though his rights had been adversely affected, he seemed quite willing to sit there, with this knowledge, unknown to either the court or other counsel, so far as the record discloses, and speculate upon the verdict of the jury; take his chance, in other words, that it would be favorable to him, in which event he would have no cause to complain, and, if unfavorable, bring the matter to light and procure thereby another trial.

Under these circumstances, we think plaintiff waived the point. If he had come in, as he should have done in the proper discharge of his duty to the court, and advised it of the irregularity, he would probably have been entitled to have the jury discharged from further consideration of the case, and doubtless the court would have so ordered.

There are no other points presented here in such a way as to require consideration and discussion upon the part of the court.

The judgment should be in all things affirmed.

By the Court: It is so ordered.