## BRANSTETTER v. HOOK. (No. 2040.)

(Court of Civil Appeals of Texas. Amarillo. March 21, 1923. Rehearing Denied May 9, 1923.)

**1. Brokers ⬤86(7)—Evidence held insufficient to support broker's right to commission.**

Evidence that plaintiff deceived defendant as to financial ability of the purchaser produced to complete the contract of sale precluded the broker from recovering under the rule that, where the commission is payable only in the event the contract of sale is completed, the plaintiff will be denied recovery, where he fails to show performance, unless the failure of performance is due to the fault of the owner.

**2. Brokers ⬤64(2) — Acceptance of forfeit held not to make seller liable for commission where purchaser produced not financially able to perform contract of sale.**

Under an agreement that no commission should be paid unless the purchaser made a cash payment of $12,000 and closed the contract in accordance with its terms, the acceptance of a forfeit of $500, fixed as liquidated damages in case of the purchaser's nonperformance, did not subject defendant to liability for the commission, where the purchaser was not financially able to perform the contract and the owner could not enforce performance.

### On Motion for Rehearing.

**3. Brokers ⬤84(2)—Ordinarily, must establish that purchaser produced ready, willing, and able to buy on owner's terms.**

Ordinarily, before a broker can claim his commission, he must show that he has produced a purchaser ready, willing, and able to buy on the owner's terms.

**4. Brokers ⬤86(5)—Mere announcement by broker of financial ability of purchaser produced not conclusive that he was ready, able, and willing to buy on owner's terms.**

A broker's mere announcement that the prospective purchaser was ready to enter into the contract of sale is not conclusive evidence that he was ready, able, and willing to buy on the owner's terms.

**5. Brokers ⬤57(2)—Owner consenting to new terms of sale after production of purchaser bound thereby.**

If the purchaser produced by a broker is not ready, able, and willing to buy on the owner's terms, then the owner is at liberty to say before entering into further negotiations on what terms he will make a sale and on what terms he will pay a commission, and, if he expressly or impliedly consents to the new terms, he becomes bound thereby.

**6. Brokers ⬤40 — Consideration to support owner's agreement to pay commission held sufficient.**

Where a broker agreed with the owner to produce a purchaser for his land and to accept a stated sum in the event of closing the deal and the payment of the cash called for, there

was a consideration sufficient to support the agreement.

**7. Vendor and purchaser ⊂⇒3(4)—Contract held option.**

A contract for the sale of land which does not bind the purchaser to take the land or pay for it, but which does bind the owner in consideration of a sum paid to convey to the purchaser upon the latter's payment of the sum stipulated, merely confers upon the purchaser the option either to take and pay for the land or forfeit the money paid.

Appeal from District Court, Sherman County; Reese Tatum, Judge.

Suit by Thomas F. Branstetter against W. H. Hook. From a judgment for defendant, plaintiff appeals. Affirmed.

W. I. Gamewell, of Dalhart, for appellant. Tatum & Strong, of Dalhart, for appellee.

KLETT, J. In a commission suit instituted by Thomas F. Branstetter against W. H. Hook, plaintiff alleged that the defendant promised to pay him $5 per acre for finding a purchaser for 353 acres of land and that the service was performed by procuring one Toney Colle to enter into a contract of purchase with defendant. The defendant, following a general denial, specially answered: That the contract was not concluded because the purchaser was not financially able; that the defendant was induced to enter into the contract by the false and fraudulent representations of the plaintiff as to the purchaser's financial ability; and that it was the agreement between the plaintiff and defendant that no commission was to be paid unless the purchaser made the cash payment of $12,-000 called for and closed the contract in accordance with its terms. The plaintiff replied by supplemental pleadings that after the written contract was entered into the plaintiff waived the fraud by undertaking to carry out the contract after he learned of the fraud and excused performance by accepting the forfeit of $500 fixed as liquidated damages in case of the purchaser's nonperformance.

In answer to special issues, the jury found that defendant was deceived by plaintiff as to the purchaser's financial ability and that the commission was to be paid when the deal was closed and cash payment made. Thereupon judgment was rendered in favor of defendant. The evidence, though conflicting in many respects, is sufficient to support the special defenses made by the defendant's answer. The failure to complete the sale was not chargeable to defendant, but was due to the purchaser's financial ability. The defendant testified at the trial that he was still ready to close the deal if the purchaser would carry out his part of the contract. The plaintiff admitted on the witness stand:

"I knew my prospective purchaser failed to comply with his contract. I think Mr. Hook has complied with his part."

[1] Upon the facts stated we are of the opinion that all propositions presented by appellant are concluded against him and that the judgment of the trial court must be affirmed under the rule that where the commission is payable only in the event the contract of sale is completed, the plaintiff will be denied recovery where he fails to show performance unless the failure of performance is due to the fault of the owner. Lundell v. Allen (Tex. Civ. App.) 244 S. W. 1098; Heath v. Huffhines (Tex. Civ. App.) 152 S. W. 176; Freeman v. Wooten, 234 S. W. 415; Owen v. Kuhn (Tex. Civ. App.) 72 S. W. 432; Cheatam & Haney v. Dansby (Tex. Civ. App.) 159 S. W. 385.

[2] But appellant urges that appellee was at fault on the ground that appellee waived or excused performance by accepting the $500 forfeit instead of undertaking to compel performance by suit. Our view is that this position is not maintainable for the reason that the purchaser was not financially able to perform and that the owner could not force performance. Suit for specific performance would have been idle. Laird v. Elliott (Tex. Civ. App.) 219 S. W. 499; Kollman v. Brooks (Tex. Civ. App.) 155 S. W. 1007.

The judgment of the trial court is affirmed.

On Motion for Rehearing.

Additional Findings of Fact.

In compliance with appellant's request for further findings concerning particular phases of the evidence, we make the following additional statement:

That prior to March 24, 1920, the appellee told Mr. Cecil or Mr. Nield, of the Nield Realty Company, that he wanted $60 per acre for his farm near Texhoma; that on March 24, 1920, according to appellant's allegation, Cecil and Nield were agents for appellant, the broker; that on the same day Cecil went out to appellee's farm and told him that appellant had a prospective buyer for his farm; that appellee told Cecil he wanted $60 per acre; that Cecil asked appellee to go to town; that appellee did not go back with Cecil, but did go to town later in the day, when appellee met appellant and Cecil, who wanted to know appellee's price; that appellee told appellant Cecil, Colle, and Bridges he wanted $60 per acre; that they refused to consider $60, but finally agreed on $55 per acre, $50 to be net to appellee and $5 per acre to appellant as his commission; that they then went to look at the land, and upon their return appellant stated they were ready to make the deal; that at or prior to the time the written contract was drawn, appellee and appellant agreed that "if" the place was sold

---

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to Colle the commission would be paid when the deal was closed and Colle paid appellee the sum of $12,000 in cash; that there was no evidence from which the jury would be bound to find that there had been any previous agreement about the terms of the sale, but there is evidence from which the jury could find that the terms of the sale, as well as the terms of the commission, were contemporaneously arranged. On this point appellee testified in part:

"I told them, Branstetter, Bridges, and Cecil, at the time, that if they sold my place to Toney Colle, their prospective purchaser, I would pay them $5 per acre commission when the deal was closed and I received the cash payment from Colle on the land sold. The commission was to be paid out of this cash payment; that is, the $12,000 to me by Colle."

As showing that this was the construction placed by appellant on the contract, it further appears that after Colle had approved the abstract, the appellant requested the appellee. make ·a trip to Kansas to see Colle for the purpose of inducing him to close the deal; that probably two trips were made for that purpose; that because of the expense incurred by appellee in making these trips at the solicitation of appellant, the agreed commission was reduced to $1,500, and by agreement a check for that amount was signed by appellee and placed in the bank, to be paid to appellant upon the closing of the contract and the payment of the $12,000 to appellee. The check contained the following recital:

"This check to —— paid when Colle contract is closed and Hook receives money on deal."

According to appellant's own admission, this was the agreement between him and appellee. The appellant said:

"That check was the agreement between Mr. Hook and me on April 24, 1920."

The appellant further admitted on cross-examination:

"I expected that if Mr. Hook paid my commission that Toney Colle, the man I furnished to buy his farm, would pay a cash payment. I had that intention in mind."

Appellee did not know Colle, who lived in another state, or his financial ability. He relied on appellant's representations that Colle was able to get the money from his grandmother. Appellant practically admitted that he represented to appellee that Colle was able to buy, at least that he could get the money, from his grandmother. The appellant further admitted:

"My recollection is that I told Mr. Hook that Colle could get it there, in my opinion—could get the money from his grandmother. In other words, what I was saying to Mr. Hook was said to him because Mr. Hook did not know Mr. Colle. As to whether I said it for the pur-

pose of inducing Mr. Hook to 'sign that' contract, I said it for the purpose of making the deal; yes, sir. As to whether I said it for the purpose of getting Mr. Hook in that contract with Mr. Colle, yes, sir; it was my purpose to inform Mr. Hook the condition. It certainly was made by me for the purpose of making Mr. Hook enter into the contract."

### Additional Conclusions of Law.

[3-6] Appellant insists that the ·alleged agreement to pay a commission upon the closing of the deal and the payment of the money was not binding upon him for two reasons: (1) He did not assent to such statement by appellee; and (2) there was no consideration for the agreement. We think the evidence, considered as a whole, shows that it was the mutual understanding of the parties to make the commission payable as stated. Ordinarily, before a broker can claim his commission, he must show that he has procured a purchaser, ready, willing, and able to buy on the owner's terms. There is no conclusive evidence showing, up to the time of the alleged sale, that the terms of the sale were other than cash, or that the purchaser produced was ready, able, and willing to buy on the owner's terms. The broker's mere announcement that the prospective purchaser was ready to enter into the contract was not conclusive evidence that he was ready, able, and willing to buy on the owner's terms. The written contract entered into was not a cash sale. It allowed the purchaser both time and credit. If the purchaser produced by the broker was not ready, able, and willing to buy on the owner's terms, then the owner was at liberty to say, before entering into further negotiations, on what terms he would make a sale, and on what terms he would pay a commission. And if the evidence shows that the broker, expressly or impliedly, assented to the new terms, he became bound thereby. In such case the jury . had the right to believe that silence gave consent. That such was the mutual understanding is shown by the conduct of the parties and the construction they placed upon the transaction in their subsequent dealings. There was ample consideration for the agreement in the fact that the owner at least waived investigation, of the prospective purchaser's financial ability and entered into contract with a stranger on the broker's recommendation of his ability. If the consideration was lacking for the original agreement, it was present in the making of the last agreement when the owner and broker contracted that the latter would accept a check for $1,500 in payment of the commission upon closing of the deal and payment of the cash called for. The fact that this agreement was entered into by reason of the expense incurred by the owner in making two trips to the state of Kansas, at the request of the broker, in an endeavor to close the

deal, justified the jury in assuming: First, that the broker considered the payment of his commission dependent upon the closing of the deal and the payment of the money; and, second, that there was a consideration moving to the broker by virtue of the owner's assistance rendered at the broker's request. The agreement indorsed on the check was the last one entered into by the parties with reference to the commission, and there is no apparent reason why it should not be respected and enforced. The appellant admitted it was the agreement, and it will therefore be upheld by the court.

[7] Appellant has requested that we find that the sale contract entered into was capable of specific performance. We have disposed of this case on the assumption that the written instrument signed by the owner and purchaser was a sale contract and not an option agreement; but, without conceding that the question is material or necessary to a decision, we will say, after having examined the agreement with the view of passing on the question, that in our opinion the agreement is a mere option and not a contract to convey, for the reason it does not bind the purchaser to take the land or pay for it. We think the fact that the owner was bound, in consideration of the $500 paid, to convey to the purchaser upon the latter's payment of $12,000 cash, merely conferred upon the purchaser the option either to take and pay for the land or forfeit the $500. Such an agreement is different from one where the purchaser is bound to take the land and pay for it. In the latter event the option is with the vendor, either to enforce the contract or to claim the forfeit money as liquidated damages.

The motion for rehearing is overruled.