### WASSON v. CLYMER.

No. 14583—Opinion Filed July 7, 1925.

**Brokers—Right to Commission for Sale of Land—Owner's Adoption of Unauthorized Contract Made by Broker with Buyer.**

Where the owner has employed a broker to sell land on terms agreed upon between them, and the broker with the approval of the owner enters into a written contract with the proposed purchasers in the name of the owner and for him, and the owner with full knowledge of the terms of the contract accepts and appropriates $1,000 paid by the proposed purchasers as a cash payment and, for the purpose of carrying out the contract, appears at the time and place designated in the contract for payment of deferred payment and delivery of the deed, he thereby makes the contract his own, although the broker was not authorized in writing to sign the name of the owner to the contract.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Atoka County; J. H. Linebaugh, Judge.

Action by C. B. Wasson against E. T. Clymer. From judgment in favor of the defendant, plaintiff appeals. Reversed.

J. H. Gernert, for plaintiff in error.

J. G. Ralls, for defendant in error.

Opinion by RAY, C. The only question to be decided is whether the court erred in sustaining a demurrer to plaintiff' evidence. The suit is by a broker to recover on an oral contract for sale of land.

Plaintiff's evidence was that he secured prospective purchasers and phoned the owner to come to his office, where the prospective purchasers were, and enter into a contract with them, but, after talking over the terms, the owner told him that it was unnecessary for him to be there and for him, the broker, to enter into the contract. The contract of sale was drawn by the broker in conformity to instructions of the owners as to terms and conditions and signed by the proposed purchasers and the owner by the broker as agent. The terms of the contract were, in substance, that $1,000 was to be paid cash at the time the contract was signed, October 20, 1920, $7,000 to be paid January 1, 1921, $10,000 in five years, and the purchasers to assume a $25 000 mortgage on the property. The $7,000 was to be paid when the deed was delivered by the owner at the Oklahoma State Bank of Atoka on January 1, 1921. A copy of the contract and the $1,000 check were sent by mail by the broker to the owner at his address. The owner cashed the $1,000 check. At the trial the seller was produced as a witness for the plaintiff and testified that he was in Atoka on the 1st day of January, 1921, to carry out his part of the contract, and that he did not see the broker or either of the proposed purchasers. The broker, plaintiff, testified that he was in Atoka and made inquiry at the bank on January 1, 1921, for a deed, and it may be inferred from his testimony that it was not there. He testified that both of the proposed purchasers were there ready to carry out their contract and that the seller was not there at that time. The plaintiff took the deposition of one of the proposed purchasers, in which he testified that he was willing and ready to carry out his part of the contract, but that his associate did not at that time have the money.

The written contract contained the following provision:

"* * * And it is further agreed between the parties hereto, that if default be made in fulfilling this contract or any part thereof, by said parties of the second part (the purchasers), then said party of the first part, his heirs or assigns, shall be at liberty to consider this contract as forfeited and annulled, and he may dispose of said land to any other person in the same manner as if this contract had never been made."

The oral contract with the broker and seller is not questioned, but it is contended for the defendant in error that the broker did not secure purchasers who were ready, able, and willing to buy, but only secured persons who were ready, willing and able to enter into an escrow agreement and put up a forfeiture, which was to be liquidated damages in the event that they failed to comply with the agreement; that the agreement was merely an optional contract and that whatever ratification there was on the part of the seller was a ratification of an escrow agreement and nothing more. But we think by the above-quoted clause in the contract, that the option rested with the seller only; that is, if the purchasers failed to comply with their contract, then the seller was "at liberty to consider the contract as forfeited annulled," and to dispose of the land as though the contract had not been made.

We think the law is so well settled that it may be stated as elementary that where one party signs a contract for another and the party for whom it is made approves the contract and accepts its benefits, it becomes his contract. While the broker held no power of attorney to sign the contract, the evidence shows that it was signed under the instruction and approval of the owner; that the owner was furnished a copy immediately thereafter and accepted and appropriated the $1,000 that was paid at the time the contract was executed for him. The evidence shows that on the first day of January, more than two months after the contract was made, he was in Atoka, having gone there for the purpose of carrying out his part of that contract. We think this evidence, uncontroverted, was sufficient to prove that the owner had entered into a contract with the proposed purchasers furnished by the broker.

Entertaining this view, we think the case falls squarely under the rule laid down in Scully v. Williamson, 26 Okla. 19, 108 Pac. 395, and approved in Hopkins v. Settles, 46 Okla. 801, 149 Pac. 890; Croak v. Trentman, 50 Okla. 659, 150 Pac. 1088; Talla v. Anderson, 53 Okla. 418, 156 Pac. 670, and expressly followed in McCartney v. Shores, 77

Okla. 273, 188 Pac. 663, and Campbell v. Thomas-Godfrey Land & Loan Co., 81 Okla. 201, 197 Pac. 452. The rule laid down in Scully v. Williams, supra, is as follows:

"Where a broker is employed to procure a purchaser for property, and presents to his principal a purchaser, it is for the principal then to decide whether the person is acceptable; and, if, without any fraud, concealment, or other improper practice on the part of the broker, the principal accepts the person presented, and enters into an enforceable contract with him, the broker is entitled to compensation for his services, although it subsequently turns out that the purchaser is not able to comply with his contract, and on that occupant the sale is not consummated by a transfer of the property."

Of course, the right to a commission always depends upon the contract between the seller and the broker. The case of Hopkins v. Settles, supra, by Brewer, C., is instructive. In that case the plaintiff sought to recover $500 commission on an agreement that, for bringing the parties together and consummating a valid agreement of sale, he was to have all over and above $16,500 that the property would bring. The proof was that he procured a purchaser who was willing to pay $17,000 for the property and did pay $1,000 down. The contention was that he was entitled to the commission when the parties entered into an enforceable contract under the rule laid down in Scully v. Williams. The verdict was for the defendant and the judgment was affirmed, but not upon the ground that he could not recover on such a contract. The defendant denied there was such a contract and contended that he merely made plaintiff a price upon his land that would be satisfactory to him; that he told the plaintiff if he brought about a sale and he got $16,500 for his property, plaintiff could have as his own any additional sum he might get out of the purchasers; that while the additional sum of $500 was added to the agreed purchase price in the contract with the proposed purchaser, the agreement between the broker and seller was that this sum was merely to be turned over to plaintiff in case the sale was completed and went through; that the sale did not go through; that none of the deferred payments were made and that the purchaser would not carry out his contract. It is pointed out in the opinion that the question was as to whether the commission was due the broker when the contract of sale was entered into between the seller and the buyer, or whether it was due the broker after the full $16,500 had been paid. It was pointed out that the jury accepted the defendant's version of the contract, and as the evidence was very conflicting, the verdict could not be disturbed on appeal.

As pointed out, the instant case was decided on a demurrer to plaintiff's evidence. No question was raised as to the terms of the contract between the seller and the broker. If, when tried on its merits, it should develop that there was a definite understanding as to the contract between the seller and the broker as to when the money was to be paid, that is, whether it was to be paid when the broker presented a purchaser acceptable to the seller or whether to be paid when the full contract price was paid, then it would present a question for the jury and would fall within the rule of Hopkins v. Settles just quoted.

We think that the seller, in instructing the broker to sign the contract for him and receiving the copy of the contract and the money, and appropriating the money to his own use, made the contract his own, and by going to Atoka for the purpose of carrying out that contract, again affirmed it.

We think the court erred in sustaining the demurrer to plaintiff's evidence, and the judgment should be reversed, with directions to grant plaintiff a new trial.

By the Court: It is so ordered.

Note.—See under (1) 9 C. J. p. 561, § 61.