## McCOMAS v. SMITH.

No. 20398. Opinion Filed Sept. 22, 1931.

J. E. Curran, and S. H. King, for plaintiff in error.

Sargent & Ross, for defendant in error.

RILEY, J. This is an action brought by plaintiff in error to recover the sum of $5,000, alleged to be due as commission on the sale of one-half of the royalty on 80 acres of land in Noble county.

Written authority was given plaintiff by defendant to sell the one-half interest. At the same time defendant gave plaintiff the following letter:

"Tonkawa, Oklahoma, July 31, 1922.
"M. F. McComas, Esq.
"Blackwell, Oklahoma.

"Dear Sir:

"Under separate letter dated today, I gave you authority to sell one-half of my royalty on the east one-half of the northeast quarter of section 15, township 24 north, range 1 west, Noble County, Okla., for the consideration of twenty-five thousand dollars ($25,000), and I hereby agree that in case such royalty sale is made by you for the above-mentioned price, I will pay you as commission for your selling said royalty the sum of five thousand dollars ($5,000), when the sale is completed and the money is paid in.

"Yours very truly,
"J. H. Smith,
"Tonkawa, Oklahoma."

This agreement to pay commission as

stipulated in the letter gave rise to this action.

Plaintiff, McComas, found a purchaser, Mrs. C. L. Beatty, who, on October 23, 1922, entered into a written contract with defendant whereby it was stipulated and agreed that Smith had sold and agreed to convey, or have conveyed, the royalty interest to Mrs. Beatty, or anyone designated by her, for the sum of $25,000, to be paid: $15,000 on or before November 23, 1922, and $10,000 on or before December 23, 1922. The contract also stipulated:

"It is further agreed that should either party make default in the terms of this agreement, that such party at default agrees to pay the adverse party hereto the sum of fifteen thousand dollars ($15,000) as is hereby agreed upon, as liquidating damages due on date of default and payable on demand, said amount being paid to the Bank of Commerce, Tonkawa, Okla., who is escrow agent, and who negotiated this sale, said escrow agent paying said sum to party entitled to said forfeit. This agreement to be issued in duplicate to be performed in the office of the Bank of Commerce, Tonkawa, Okla."

It is further stipulated in the contract, in substance, that it was understood that Mrs. Beatty was endeavoring to sell the royalty interest involved to some third party or parties at a price of $30,000, or other sum to be fixed by her, and that in case she effected a sale of any part thereof, Smith agreed to convey to such party or parties such interest as might be so sold, said sales to be indorsed upon the contract, and the money received therefor paid to Smith and credited upon the purchase price. No such sales were made.

The contract was placed in the bank designated, and $15,000 paid thereon on November 23, 1922. Sometime before the second payment was due, the parties indorsed an extension of time for the second payment upon the back of the contract as follows:

"The time of second payment on the within contract in hereby extended until February 2, 1923, by mutual consent of both parties hereto, without change or alteration of any other terms therein.
"James H. Smith,
"O. L. Beatty."

The payment falling due under the extension agreement was never made, and thereafter defendant, Smith, with the consent of Mrs. Beatty, took the $15,000 from the bank, and left the contract there until shortly before the trial in this action.

There was some evidence tending to show that Mrs. Beatty was financially able to pay the $10,000, and was at the time of the trial worth from $150,000 to $200,000.

It is in evidence that Smith was at all times willing and ready to comply with his contract to convey to Mrs. Beatty, and he testified at the date of the trial he was still ready and willing to convey to her upon receipt of the remaining $10,000. He never did attempt to compel her to comply with her contract.

The sole question, then, is whether or not under these facts plaintiff was entitled to the $5,000 commission.

The cause was tried to the court without a jury, resulting in a judgment for defendant, and plaintiff appeals.

The parties will be referred to herein as in the trial court.

Plaintiff contends that he found a purchaser able, ready, and willing to purchase upon terms accepted by defendant, and that the purchaser entered into a valid, binding and enforceable contract to purchase, and that by reason thereof the commission stipulated became due and payable.

Defendant concedes that this contention would be correct if the agreement to pay a commission was the ordinary broker's commission agreement, i. e., where the broker agrees merely to procure a purchaser for the property for which the owner agrees to pay a commission, but contends that the agreement here involved is a special contract limiting plaintiff's right to claim the commission only "when the sale is completed and the money paid in."

The general rule is that, where the principal and the customer found by the broker enter into a valid contract, and the broker acts in good faith, the broker is not deprived of his right to a commission by the fact that the customer failed to carry out his contract, unless the broker knew at the time of offering his services that the customer would be unable to carry out the contract. This rule is said to be especially applicable where the failure or refusal of the customer is due to some fault of the principal. 9 C. J. 631-32. Failure of Mrs. Beatty to carry out her contract was not due to any fault of Smith. In the same paragraph, 9 C. J., supra, it is stated:

"However, the principal may avoid the rule by embodying a stipulation to the contrary in the contract of employment."

Authorities are cited in support of this latter rule from the United States Circuit Court of Appeals, and some 15 or 16 states, among which is Hopkins v. Settles, 46 Okla. 801, 149 P. 890.

In Hopkins v. Settles, supra, it was held:

"Questions arising out of a claim by a real estate broker for commissions or compensation generally depend upon the contract or understanding between him and the owner, under which the broker acts. The owner has the right to stipulate that he will not pay, or be in any way obligated to pay, for services in relation to the sale of his land, except in the event such sale is fully and finally consummated."

It is contended, however, that the contract of sale was valid, and that the sale was, in fact, completed when the contract was signed. But, conceding this to be true, the further special provision of the agreement for payment of commission reading, "and the money paid in," must be considered. Wasson v. Clymer, 112 Okla. 59, 240 P. 214, is a case where the rule announced in Hopkins v. Settles, supra, is recognized and reaffirmed. The latter case is one wherein a question similar to the one here under consideration was involved. In that case it is said:

"Of course, the right to a commission always depends upon the contract between the seller and the broker."

And:

"As pointed out, the instant case was decided on a demurrer to plaintiff's evidence. No question was raised as to the terms of the contract between the seller and the broker. If, when tried on its merits, it should develop that there was a definite understanding as to the contract between the seller and the broker as to when the money was to be paid, that is, whether it was to be paid when the broker presented a purchaser acceptable to the seller or whether to be paid when the full contract price was paid, then it would present a question for the jury and would fall within the rule of Hopkins v. Settles just quoted."

In Clark v. Seay, 140 Okla. 198, 282 P. 357, it was held:

"Where a broker's contract of employment provides for a net price to the owner and employer, the broker to receive as his commission all over and above the net price for which the property is sold, and the broker secures a purchaser acceptable to the employer, and who offers to pay a sum in excess of the net price, but the sale is not consummated because of a defect in the title to the property, and the broker sues his employer on the contract for the excess as his commission, he is not entitled to recover in the absence of a showing that the sale was completed, and a price received in excess of the net price stipulated."

Smith v. Post, 167 Cal. 69, 138 P. 705, is a case wherein the principal agreed:

"'I hereby agree to pay the above when the first payment of $100,000 is completed'."

In that case it was said:

"Equally indisputable is the fact that defendant did not employ plaintiff generally as a broker to secure a purchaser for his property. He agreed to pay him commissions for a contemplated specific sale to Mrs. Bilhorn or to her nominees, upon specific terms of sale clearly set forth in writing."

The court there held that the broker could not recover because of the failure of a customer to pay the $100,000, and this whether the contract was treated as an option or as an executory contract of sale.

In Hinds v. Henry, 36 N. J. Law, 328, it was held:

"The general rule is that the right of a broker to commissions is complete when he has procured a purchaser able and willing to conclude a bargain on the terms on which the broker was authorized to sell.

"This rule rests on the general usages of the business, and is liable to be modified or superseded by a special usage in relation to the particular transaction, or by special agreement between the parties.

"A broker may, by special agreement with his principal, so contract as to make his compensation dependent on a contingency which his efforts cannot control, even though it relates to the acts of his principal.

"In an action for the payment of money on a contingency, the pleader must aver, and it must be proved, that the contingency has happened, or that performance was prevented by the other party by some wilful or fraudulent act, in violation of his own undertaking, express or implied."

In Lassen v. Bayliss, 125 Fed. 744, 60 C. C. A. 512, it was held:

"Where a broker's employment contract for the sale of certain land provided that it should be void in case of a failure of the agreement of sale, it was incumbent on the broker, in an action for commissions, to show that the agreement of sale was performed by the purchasers, or by some one who took their place under the agreement."

In Heath v. Huffhines (Tex. Civ. App.) 152 S. W. 176, it is held:

"Notwithstanding the general rule that a broker employed to sell land earns his commission when he procures a purchaser ready and able to buy on the terms offered who enters into an enforceable contract therefor, a special agreement that no commissions shall be paid unless the sale is completed, the title transferred, and payment made, is valid."

And:

"Where a broker agrees that he shall receive no commissions until a sale is actually consummated by a transfer of title and payment of the purchase price, he cannot

recover, in the absence of such consumation, without showing that the failure to complete the sale was due to the owner's fault."

This was a case where a question almost identical with the one under consideration was involved. There a peremptory instruction to find for the plaintiff had been given and judgment entered in favor of the broker. On appeal, in reversing the judgment, the court said:

"It is not pretended that Evans at any time had the purpose of himself completing the sale, and the evidence fails to show what further appellant could have done in order to secure its consummation, without the institution of legal proceedings, and this hazard he was not bound to undertake if his special plea with reference to the payment of commissions was true."

Defendant in his brief cites many cases holding to the same general effect. Plaintiff cites many cases which he insists uphold his contention. But an examination will show that they are cases involving employment for the sale under a general broker's contract, and come within the general rule recognized by nearly all of the courts and as stated in 9 C. J. 631, supra.

The plaintiff having contracted for the payment of commission when the sale was comple'ed and the money paid in, and it appearing that the money was never paid in, and there being no evidence tending to show that the failure of Mrs. Beatty to make the payment provided for in her contract was in any way caused by, or was the fault of, the defendant, it follows that the judgment rendered below is correct, and said judgment is affirmed.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. CLARK, V. C. J., and ANDREWS and KORNEGAY, JJ., absent.

Note.—See under (1) Annotation in 64 A. L. R. 416; 4 R. C. L. 297; R. C. L. Perm. Supp. p. 1104.