469 P.2d 662 (1970)
EAST CENTRAL OKLAHOMA ELECTRIC COOPERATIVE, INC., Plaintiff in Error,
v.
PUBLIC SERVICE COMPANY of Oklahoma, a Corporation, Defendant in Error.
No. 42440.
Supreme Court of Oklahoma.
April 28, 1970.
Rehearing Denied May 26, 1970.
Charles B. Steele, Okmulgee, for plaintiff in error.
Robert L. Lawrence, Everett L. Cunningham, Tulsa, Dwight Tolle, Okemah, for defendant in error.
*663 JACKSON, Justice.
This is an appeal by plaintiff in the trial court, East Central Oklahoma Electric Cooperative, Inc., from a judgment refusing to grant an injunction against the defendant, Public Service Company of Oklahoma, preventing Public Service from rendering electric service to a residence and veterinary clinic owned by Dr. C.C. Tolleson on the south side of U.S. Highway No. 62, about three and one-half miles east of Okemah, Oklahoma.
The issue presented involves the interpretation of the following portion of 17 O.S. 1961, Sec. 158.1:
"No supplier of electric service shall extend or render or offer to extend or render electric service to premises * * (b) not receiving such service and to which premises such service is available from the facilities of another supplier of electric service through an extension not more than 500 feet in length from a distribution line * * *."
There is little dispute as to the facts. East Central has served the general area for many years as a supplier of electricity. Public Service also served nearby areas, and had a distribution line about one mile south of the Tolleson premises. East Central had distribution lines in two different places running east and west along, and on the north side of, Highway 62, but there was a "gap" about a mile long between the ends of these two lines; the Tolleson premises were in the approximate center of this gap, being about one half mile from each of the ends.
Early in 1966, East Central, in pursuance of a "work plan" adopted about two years before, decided to close the gap in order to serve prospective customers along Highway 62. It issued its work order to that effect on March 16, 1966, and staking of the line was completed that day. Dr. Tolleson on March 25, 1966, signed a "connect order" which amounted to a request to Public Service for electric service. On March 29, 1966, Public Service set two poles on the Tolleson premises. On March 31st, East Central's sub-contractor started work on closing the gap, and it was completed on April 4th. At this time electric service was "available" to the Tolleson premises from the East Central distribution line directly across the highway, and less than 500 feet away. On April 11th, according to the testimony of the Public Service line foreman, his crew started building the extension line from the Tolleson premises to the distribution line one mile south. On May 10th, the bulldozer work at the Tolleson building site was finished, and his carpenters needed electric service. Public Service provided it with a portable generator. On May 26th, after a delay incident to getting official permission to run the line across U.S. Interstate Highway No. 40, the Public Service extension was energized, and Public Service first rendered electric service to the Tolleson premises through the energized line. This is the first date on which Public Service was able to "* * * extend or render * * *" electric service to Tolleson within the meaning of the statute.
Most of the evidence above summarized was included in the trial court's findings of fact. From his conclusions of law and his remarks at the time of pronouncing judgment, it is evident that he felt compelled to rule in favor of defendant Public Service Company because he felt that the rights of the parties were fixed or vested at the time Dr. Tolleson signed the "connect order" for Public Service on March 25th, and that any other *664 result would amount to an improper restraint upon their freedom to contract. On this point, it is suggested in the answer brief of Public Service, but not seriously argued, that a reversal of the trial court would have the effect of "impairing" the contract for electric service entered into on March 25th.
We are unable to agree that the rights of the parties were fixed or vested as of that date, or that a reversal would impair the obligation of the contract of March 25th, within the meaning of Article 1, Section 10, United States Constitution, or Article 2, Section 15, of the Oklahoma Constitution.
Assuming the acceptance of the "connect order" from Dr. Tolleson on March 25th, was an offer by Public Service to extend or render electric service, such offer was not prohibited by the statute, since at that time East Central had no distribution line within 500 feet of the Tolleson premises. However, the statute is not limited to an offer only, but also provides that a supplier of electric service shall not "* * * extend or render * * *" service at a time when another supplier has a distribution line within 500 feet. See East Central Oklahoma Electric Cooperative, Inc. v. Public Service Company of Okla., Okl., 463 P.2d 980. Under the uncontradicted evidence, when Public Service first extended service on May 26th, the East Central distribution line was within 500 feet of the Tolleson premises, and had been since April 4th, one week before Public Service actually started construction of its own extension line. No significance can be attached to the "portable generator" service furnished by Public Service between May 10th and May 26th, since that is plainly not the kind of electric service contemplated by the statute.
It is well settled that freedom to contract, or the right to enter into a contract, is protected from arbitrary restraint or interference by the due process clauses of state and federal constitutions. Hudgins v. State, 75 Okl.Cr. 446, 133 P.2d 231; 16 Am.Jur.2d Constitutional Law, Sec. 373; 16A C.J.S. Constitutional Law § 575. It is not an absolute right, but is subject to reasonable restrictions and limitations, 16 Am.Jur.2d Constitutional Law, Sec. 375, and in the proper exercise of the police power, the state may impose reasonable restraints and limitations upon the right to contract. 16 Am.Jur.2d Constitutional Law, Sections 377. Freedom to contract is not necessarily violated by legislation indirectly operating as a deterrent because it restricts dealings which are associated with a contract. 16 Am.Jur.2d Constitutional Law, Sec. 378. Under these well recognized rules, it is clear that no violation of freedom to contract is involved in giving effect to the provisions of 17 O.S. 1961, Sec. 158.1, in the situation now before us.
Also, it is well settled that the existing applicable law is a part of every contract, the same as if expressly referred to or incorporated in its terms, Nichols v. Callaway, 200 Okl. 328, 193 P.2d 294; 16 Am.Jur. Constitutional Law, Sec. 436; 17A C.J.S. Contracts § 330. If the "connect order" of March 25th was a contract the terms of 17 O.S. 1961, Sec. 158.1 constituted an implied part of the agreement, and the performance of the contract was subject to the prohibition contained in the statute. It thus cannot be said that the obligation of the contract is impaired if it is not given effect to the exclusion of the statute.
The obvious purpose of the statute is to prevent the wasteful duplication of distribution lines by competing suppliers of electric service, a waste for which the customers of these public utilities would eventually have to pay. A holding that a public utility company could, by contract, acquire a vested right to serve a particular location, and thereafter extend service in violation of 17 O.S. 1961, Sec. 158.1, which was in force when the contract was made, would effectively block the attainment of this legislative purpose. This result is not required by the state or federal constitution.
The judgment is reversed and the cause is remanded to the trial court with directions to grant the injunction.
All the Justices concur.