**EASTERN OKLAHOMA LAND & CATTLE CO., Appellant,**

**v.**

**Bertha DORRIS, Appellee.**

**No. 47678.**

Supreme Court of Oklahoma.

April 20, 1976.

Bonds, Matthews & Bonds, by Albert R. Matthews, Muskogee, for appellant.

Sandlin & Payne, by R. Forney Sandlin, Muskogee, for appellee.

HODGES, Vice Chief Justice.

This is an appeal by Eastern Oklahoma Land & Cattle Co., Inc. (broker) from a judgment entered by the court in favor of Bertha Dorris (vendor) in an action for a brokerage commission.

The broker brought an action against the vendor, alleging that by a written agreement she had authorized the sale of certain real property. The broker also alleged that by separate contract the vendor had agreed to pay a real estate commission. The broker asserted that it had secured a purchaser ready, willing, and able to buy and pay for the real property but that the vendor refused to close the real estate transaction.

The vendor's answer admitted that there was an agreement made to pay the commission as alleged by the broker, but stated that the commission was only to be paid upon the closing of the sale, and the sale was never closed. The trial court entered judgment for the vendor.

The vendor is a widow who owns a one-third (⅓) undivided interest in the real property. Her five children own the remaining two-thirds (⅔) interest. The vendor contacted an agent of the broker and asked that he and his company try to sell her land, and the agent procured prospective buyers. The testimony was that prior to signing the "Contract for Sale of Real Estate" the vendor told the broker's agent that she did not own the property in its entirety, but she thought she could get her children to agree to the sale. Her attorney also testified he told the broker before the contracts were signed that: the vendor did not own all the property, her children had a substantial interest in it; it would be necessary to have all the children sign the conveyance in order to give good title to the real property; and it might be difficult to get one of the children to cooperate in the sale because she and her mother were not "getting along at all."

Subsequently, a contract was entered into on the 24th of November, 1971, between the prospective buyers and vendor for the sale of real property. On the same day, the vendor entered into a contract with the broker through its agent to pay a real estate commission upon closing of the sale. The children did not sign either of the contracts. The "Real Estate Commission Agreement" prepared by the broker provided:

I, or We, hereby approve and accept the hereto attached CONTRACT FOR SALE OF REAL ESTATE dated this 24th day of November, 1971, and marked "Exhibit—A". I, or We, further agree to pay EASTERN OKLAHOMA LAND AND CATTLE CO., INC., 214 North 4th, Muskogee, Oklahoma, a commission of $3,460.80 upon closing.

On January 25, 1972, the attorney for the vendor informed the agent for the broker that the vendor had decided not to sell because her children had advised against it. The prospective buyers, through their attorney, notified the vendor that they were ready, willing, and able to purchase the property, and made demand upon the vendor to close the contract. The contract was never closed and the vendor refused to pay the real estate commission under her contract with the broker.

The right of a real estate broker to recover a commission for his services

depends upon the contract between the vendor and the broker. Where the contract is in writing and provides that the vendor will pay the broker a stipulated commission when the sale is completed, the broker is not entitled to recover where the sale was not consummated in the absence of a showing that the failure to complete the sale was caused by the fault of the vendor. *McComas v. Smith,* 151 Okl. 193, 3 P.2d 213 (1931).

In the absence of a stipulation to the contrary between the broker and the vendor, it is the general rule that the broker is entitled to his commission if, acting in good faith, he procures a purchaser willing, able, and ready to take the property upon the terms offered by the vendor. This is so even if the contract is rescinded or the sale otherwise fails because of a defect in landowners' title. *Yoder v. Randol,* 16 Okl. 308, 83 P. 537 (1905); *Monzingo v. Bowers,* 135 Okl. 225, 275 P. 339 (1929); *Richardson v. Hill,* 196 Okl. 135, 163 P.2d 528 (1945).

The broker asserts even though the vendor did not own title to all the property his position for recovery of his commission is sustained by *Pliler v. Thompson,* 84 Okl. 200, 202 P. 1016, 1018 (1922) which stands for the premise when property is placed in the hands of a real estate broker for sale, it is not required the broker examine the title of his principal to the property listed and ascertain at his peril whether or not such title is perfect. The broker has a right to presume that his principal owns land or is authorized to make a sale thereof when it is listed with the broker. We agree this is the general rule. However, an exception to the rule exists where a broker employed to sell real property knows, or should know, that the one employing him will be unable to give a good title or that one having an interest in the property will not join in the sale If a real estate broker, at the time he makes a contract with the vendor for the sale of his real property knows of any defects in the

owner's title, or is aware of facts sufficient to put a reasonably prudent person on inquiry which, if followed with reasonable diligence would advise him of any such defect, the broker is not entitled to recover a commission if the sale fails because of the defect. *Best v. Kelly,* 22 Wash.2d 257, 155 P.2d 794, 156 A.L.R. 1387 (1945). The distinguishing factors present in the instant case from the Pliler case are: prior to the execution of the contracts, the vendor never told the broker she could get her children to join her in conveying the real property but that she thought she could get them to agree to the sale. The broker was further put on notice of a possible title defect by a conversation with the vendor's attorney in which he was told before the contracts were signed that one of the children might cause difficulty because she and her mother were not getting along at all, and the primary source of their disagreement was the real property in question. Concededly, the transaction failed because of a defect in vendor's title, inasmuch as she only owned an undivided one-third ($\frac{1}{3}$) interest in the real property. Althought the evidence is disputed, the evidence supports the finding that the broker knew of the defect in title prior to the time the contract of sale and real estate commission were signed.

The applicable rule in such cases is set forth in *Stevenson & Tomm v. Barnes,* 274 P.2d 531, 534 (Okl.1954), in which the court said:

> "It is essential to the broker's right to commissions where the transaction in question fails of consummation because of a defect in, or absence of, title, that he himself is not at fault and that he does not have knowledge or notice of the defect in, or absence of, title at the time of finding the customer."

We, therefore, affirm the judgment of the trial court that the broker was not entitled to recover a commission.

All Justices concur.