2005 OK 87

**M.J. LEE CONSTRUCTION COMPANY, an Oklahoma corporation, Plaintiff/Petitioner,**

v.

**OKLAHOMA TRANSPORTATION AUTHORITY, an instrumentality of the State of Oklahoma, Defendant/Respondent.**

No. 102,057.

Supreme Court of Oklahoma.

Dec. 6, 2005.

---

Gerald G. Stamper and Trent A. Gudgel, Nichols Wolfe Stamper Nally Fallis & Robertson, Tulsa, Oklahoma, for plaintiff/petitioner.

1. The Oklahoma Transportation Authority is an instrumentality of the state and the exercise of its power is deemed an essential governmental function. 69 O.S.2001, § 1703(A). It is made up of the Governor, as an ex officio member, and six members appointed by the Governor with consent of the Senate. 69 O.S.2001, § 1703(B). The Authority is authorized to construct, maintain, repair and operate turnpike highways and turnpike projects. 69 O.S.2001, § 1703(A). The Authority may sue and be sued in contract, reverse condemnation, equity, mandamus and similar actions; and all its duties may be enforced in an action in mandamus. 69 O.S.2001, § 1705(d).

The Oklahoma Transportation Authority is the successor to the Oklahoma Turnpike Authority.

John B. Hayes, Hayes Magrini & Gatewood, Oklahoma City, Oklahoma, for defendant/respondent.

TAYLOR, J.

¶ 1 The district court certified, for immediate appeal, an interlocutory order construing the Oklahoma Transportation Authority's 1999 Standard Specifications for Turnpike Construction. The specifications are part of a contract between the Oklahoma Transportation Authority,[1] defendant/respondent (Authority), and a highway construction contractor, M.J. Lee Construction Company, plaintiff/petitioner (M.J.Lee). Two questions are presented: 1) Do the specifications limit the damages a contractor may recover in the district court to the amount the contractor claimed before the Authority? and 2) Do the specifications allow the contractor to recover damages in the district court for items of expense it did not claim before the Authority? We answer both questions in the negative. We vacate the certified interlocutory order and remand this case for further proceedings consistent with this opinion.

## I. Facts and Proceedings Below

¶ 2 The Authority let bids on a series of construction projects to connect the turnpikes around Tulsa, Oklahoma.[2] The projects involved separate contracts for a variety of work to be done, including utility relocation, grading, drainage, bridges and paving.[3] M.J. Lee bid on a project to construct nine bridges on a portion of the Broken Arrow

The Legislature changed the name, effective November 1, 1999. 1999 Okla.Sess.Laws, ch. 341, § 5 (codified at 69 O.S.2001, § 1703(F)). The Oklahoma Turnpike Authority awarded the contract at issue.

2. In contracting for the turnpike projects, the Authority must comply with the Public Competitive Bidding Act. 69 O.S.2001, §§ 1101 and 1731.

3. In contracting for construction work on turnpike projects, the Authority must divide the work into paving projects, bridge projects and earthmoving or miscellaneous projects according to the type of work to be done. 69 O.S.2001, § 1705(n).

South Loop of the Creek Turnpike. On June 3, 1999, the Authority awarded the bridge project contract to M.J. Lee in the amount of $3,847,229.82. The contract included the 1999 Standard Specifications for Turnpike Construction (specifications).[4]

¶ 3 The Authority approved M.J. Lee's schedule to start the bridge work on July 1, 1999, and finish it by July 28, 2000. However, the Authority did not authorize M.J. Lee to begin work until September 29, 1999, and then suspended M.J. Lee's work from January 18, 2000, until May 22, 2000. The delays were at least partly due to another contractor's failure to finish work that had to be completed before M.J. Lee could begin the bridge work.

¶ 4 On April 17, 2000, M.J. Lee gave written notice of its intent to make a claim for additional compensation and additional time to complete the work due to the delays.[5] On May 1, 2000, the Authority's on-site representative acknowledged the notice and advised that documentation of delay costs should be collected for review at the pertinent time.

¶ 5 M.J. Lee completed the bridge project on July 31, 2001, a year later than the original time allowed in the contract. Pursuant to specification 105.19,[6] M.J. Lee submitted a claim on August 7, 2001, to the Authority's chief engineer for additional compensation for delay costs in the amount of $655,040.00.

¶ 6 Specification 105.19 prescribes a "nonbinding procedure for claim settlement." It allows the contractor to file a claim for compensation over and above the contract price after the project work is completed. The specification provides for review and settlement of the claim, first by the Authority's engineer and then its deputy director. It also allows for mediation of the claim and suit in the district court. After the engineer

denied the claim on September 10, 2001, M.J. Lee submitted the claim to the deputy director and then to mediation.

¶ 7 In November of 2002, M.J. Lee filed a contract action in the district court in Oklahoma County against the Authority to recover the balance of $143,394.17[7] due on the original contract price and damages for breach of contract in the amount of $649,318.89. M.J. Lee alleged the Authority breached the contract when it delayed, disrupted, obstructed and interfered with M.J. Lee's work, failed to coordinate M.J. Lee's work with other contractors, and failed to administer the project effectively. At a pretrial conference, M.J. Lee increased the amount of its alleged damages to $1,052,328.00. The Authority objected to the increase, arguing that the contract specifications preclude M.J. Lee from seeking damages in the district court in an amount greater than it claimed before the Authority. M.J. Lee responded that any contract provision prohibiting it from seeking its total damages for breach of contract is contrary to law.

¶ 8 The district court ruled that a contractor must present all its claims to the Authority; any claim not presented to the Authority is deemed waived; and any claim presented to the Authority may not be changed, either the items included or amounts thereof, in a subsequent judicial proceeding. The district court found that its legal ruling affects a substantial part of the merits of the controversy and that an immediate appeal may materially advance the ultimate termination of the litigation and certified the interlocutory order for immediate appeal. *See* 12 O.S.2001, § 952(b)(3) and S.Ct.R. 1.50, 12 O.S.2001, ch. 15, app.1. We previously granted certiorari to review the interlocutory order.

---

4. Specification 101.17 provides that the contract consists of the Invitation for Bids, Proposal, Contract Form, all Contract Bonds, Specifications, Supplemental Specifications, Special Provisions, all Plans, the Work Order, Change Orders, and Supplemental Agreements.

5. The first paragraph of the April 17, 2000 letter stated: "This letter is to serve as notice of M.J. Lee Construction Co.'s intent to make a claim for additional compensation and additional time for

work on account of the inordinate delays it has and is experiencing on this project."

6. The full text of specification 105.19 is set forth in the appendix to this opinion.

7. The Authority advises that it paid M.J. Lee all but $100.00 of the original contract price after the filing of this suit.

## II. Contentions and Arguments of the Parties

¶ 9 M.J. Lee asserts that it is entitled to recover additional compensation for changes in character of work, suspension of work, and delays of work. M.J. Lee also asserts that the increased amount of its claim in the district court is for equipment costs that could not be calculated until it received documentation from the Authority accurately identifying the equipment used on the project and the number of days each item was used. M.J. Lee contends that specifications 104.05, 105.18, and 109.04 allow it to seek additional compensation and additional time for unreasonable suspensions of work and for altered and extra work; that specifications 108.07(c) and 109.10 allow it to seek additional compensation for delays; and that specification 105.19 provides a mechanism for settling its claim against the Authority before litigation. M.J. Lee argues that neither specification 105.19 nor any other specification caps the damages a contractor may recover in a judicial proceeding for breach of contract.

¶ 10 The Authority contends that the contractor's notice of claim and the claim for additional compensation required to be submitted to the engineer and deputy director are conditions precedent to its liability for any delay damages under specifications 105.19 and 109.10. Accordingly, it argues that M.J. Lee cannot increase the $649,318.89 claim for delay costs submitted to the engineer and the deputy director to a $1,052,328.00 claim in the district court.

## III. Standard of Review

 ¶ 11 The meaning of specification 105.19 is at the heart of this controversy.

The mere fact that the parties press for different interpretations of specification 105.19 does not make the specification ambiguous. *See Pitco Prod. Co. v. Chaparral Energy, Inc.*, 2003 OK 5, ¶ 14, 63 P.3d 541, 544–545. Whether contract language is ambiguous is a question of law for the court. *Id.* at ¶ 12, 63 P.3d at 544. If the contract language is free of ambiguity, its meaning is a matter of law for the court. *GEICO General Ins. Co. v. Northwestern Pacific Indemnity*, 2005 OK 40, ¶ 11, 115 P.3d 856, 858. Accordingly, we review the pertinent language in the contract to ascertain its ambiguity or its meaning as a matter of law. Questions of law are reviewed by a *de novo* standard. *Gladstone v. Bartlesville Indep. Sch. Dist. No. 30*, 2003 OK 30, ¶ 5, 66 P.3d 442, 445. Our *de novo* review is plenary, independent and non-deferential. *Id.*

## IV. Rules for Construing the Specifications

 ¶ 12 Unless otherwise provided by law, a public contract is subject to the same rules that govern private contracts. 15 O.S. 2001, § 151. The specifications are standardized contract provisions prepared by the Authority and included in most, if not all, of its highway construction contracts awarded in 1999.[8] They are not the result of bargaining between the parties, rather the specifications are adhesion clauses[9] that must be "liberally construed, consistent with the object to be accomplished, so as to give reasonable effect to all of its provisions." *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, ¶ 11, 812 P.2d 372, 376. The specifications, like other contract clauses, will be considered in light of the contract as a whole and the language will

8. Specification 101.58(a) defines standard specifications as the "Specifications approved for general application and repetitive use." Although the contract at issue states it is a state-aid project, we note that the Federal Highway Administration requires standardized clauses in contracts on federal-aid projects. 23 C.F.R. ch. 1. With exceptions, the Federal Highway Administration requires standardized clauses relating to subjects such as: 1) differing site conditions, 2) suspensions of work ordered by the engineer, and 3) significant changes in character of work. 23 C.R.F. § 635.109. It also requires the state agency or public entity charged with highway con-struction responsibility to have procedures in effect to accurately determine the quantities of completed work on a uniform basis and to document the work as a matter of record. 23 C.F.R. § 635.123.

9. A contract of adhesion is not the result of bargaining between the parties. It is a standardized contract prepared by one party to the transaction that must be accepted without change by the other. *Max True Plastering Co. v. U.S. Fidelity and Guaranty Co.*, 1996 OK 28, ¶ 7, 912 P.2d 861, 864.

be assigned plain and ordinary meaning. *Pitco Prod. Co.*, 2003 OK 5, at ¶ 14, 63 P.3d at 544–545, and *Pierce, Couch, Hendrickson, Baysinger & Green v. Freede*, 1997 OK 33, ¶ 21, 936 P.2d 906, 911.

## V. Review of the Specifications Providing for Notices of Claim for Additional Compensation

¶ 13 M.J. Lee contracted with the Authority to perform the bridge work for $3,847,229.82, which it must do no matter how burdensome the cost of labor, materials, and equipment. *Cook v. Okla. Bd. of Public Affairs*, 1987 OK 22, ¶ 13, 736 P.2d 140, 145. However, a highway construction contractor may be entitled to additional compensation, over and above the contract price, for costs incurred due to delay not caused by the contractor, for extra work authorized by the public entity, or for work necessitated by changed conditions. *See, State Highway Comm'n v. Green–Boots Const. Co.*, 1947 OK 221, 187 P.2d 209. A contractor's request for additional compensation over and above the contract price must be made in the manner prescribed by the terms of the contract. *Id.*

¶ 14 Preliminary to our consideration of the nonbinding procedure for claim settlement in specification 105.19, we review the specifications prescribing the manner for a contractor to give notice of and preserve a claim for additional compensation. The steps to be taken by a contractor to preserve a claim for additional compensation are set out in separate specifications dealing with delay in work, suspended work, and altered or extra work.

¶ 15 The procedure to give notice of and preserve a claim for delay-in-work costs is set out in specification 108.07.[10] Within five days of the delay in work, the contractor must give written notice of intent to request delay compensation to the Authority's engineer. Following notice, the contractor and the Authority must keep daily records of the labor, material, and equipment costs for all operations affected by the delay; and on each Monday, they must compare the previous week's daily records. If the contractor fails to compare the previous week's records, the Authority's records are considered to be conclusively accurate. Within fifteen days after the project is completed, the contractor must submit a report to the engineer. The report must contain an item by item explanation of the additional costs due to the delay, and within sixty days, the engineer must provide a written decision on any equitable adjustment to the contract price[11] as contained in specification 109.10.[12]

¶ 16 The procedure to give notice of and preserve a claim for delay costs for suspension of work is set out in specification 104.05. That specification allows the Authority's engineer to suspend all or any portion of work for any reason during performance of the contract by written notice to the contractor, and it also allows the contractor to claim additional compensation and/or time to complete the project if the work is suspended for an unreasonable period of time. Within ten days of receiving notice to resume work, the contractor must request an adjustment for the costs of delay occasioned by the suspension. If the engineer agrees that the suspension was caused by conditions beyond the control of the contractor, its suppliers or subcontractors, the engineer will determine the appropriate adjustment in compensation. The adjustment in compensation must be

---

**10.** Delay in a contractor's work may be compensable if it is beyond the contractor's control and not caused by the fault or negligence of the contractor. Specification 101.23. A contractor may be granted an extension of time allowed for completion of work and additional compensation due to delay. Specification 108.07(c).

**11.** Equitable adjustment to the contract is defined as an adjustment in the contract price or time. Specification 101.30.

**12.** Specification 109.10 lists the items that may and may not be included in any adjustment of the contract price due to delay. Items that may be included in any equitable adjustment of costs for delays are direct labor costs, material and equipment costs, and overhead costs. Specification 109.10(a). Items that may not be included in any equitable adjustment of costs for delay are loss of profits, consequential damages, indirect costs, and attorney fees. Specification 109.10(b). The specification states: "Strict compliance with the provisions of this Subsection will be an essential condition precedent to any equitable adjustment for delays."

made in accordance with specification 109.04.[13]

¶ 17 The procedure to initiate and preserve a claim for additional costs due to altered or extra work or change in character of work occasioned by differing conditions is set out in specifications 104.06 and 105.18.[14] Before performing any altered or extra work, the contractor must give the engineer verbal notice and, within ten days, written notice detailing the altered or extra work. The engineer must investigate the conditions and respond to the contractor within ten days. Where altered or extra work is needed, the engineer may issue a change order.[15] Specification 104.06(b) expressly provides that the contractor's failure to give the required notice constitutes a waiver of any and all claims based on the alleged altered or extra work.

¶ 18 These procedures for giving notice of and preserving claims for additional compensation or time may result in adjustments to the contract price, contract time, or contract work. These specifications plainly require the contractor to give notice of and documentation for any request for adjustment in the contract price or time and plainly require the Authority's engineer to evaluate and respond to the contractor's request. Mindful of these procedures for giving notice of and preserving claims for compensation over and above the contract price, we turn to the settlement procedure in specification 105.19.

## VI. Specification 105.19—Nonbinding Procedure for Claim Settlement

¶ 19 The Authority contends that specification 105.19 fixes the conditions that will give rise to its liability for additional compensation over and above the contract price. On the other hand, M.J. Lee contends that the specification provides a mechanism for a contractor to enforce a right to recover additional compensation.

¶ 20 On its face, specification 105.19 [16] prescribes a procedure for multi-tiered review of a contractor's claim after all the contractor's work is completed. The specification allows the contractor to invoke the first tier of review by filing the claim and documentation with the chief engineer within thirty days "after all of the Contractor's costs have been incurred." Specification 105.19, Subsection 1(b). It requires the chief engineer to respond to the claim. If the chief engineer does not respond within the time limit or if the chief engineer and the contractor do not reach an agreement, it deems the claim denied. Specification 105.19, Subsection 1(c).

¶ 21 The specification allows the contractor to invoke the second tier of review by submitting the claim to the deputy director of the Authority. Specification 105.19, Subsection 2(a). If the deputy director and the contractor cannot reach an agreement on the claim, the deputy director must issue a decision on each item in the contractor's claim. Specification 105.19, Subsection 2(b).

¶ 22 If the contractor is dissatisfied with the decision of the deputy director, the contractor may invoke the third tier of review by requesting mediation. Specification 105.19, Section 3. If no agreement is reached in mediation, the contractor may pursue the claim in district court. Specification 105.19, Section 4.

---

**13.** Specification 109.04 details the items of costs that may be included for additional compensation for differing site conditions, significant changes in the character of work, and for extra work. Under this specification, the contractor may be compensated for loss profits where the engineer suspends the work: in contrast, where the work is delayed, but not suspended by the engineer, loss of profits is expressly disallowed as an item of delay cost in specification 109.10.

**14.** Specification 105.18 deals with the form and substance of a claim for additional compensation for work not clearly covered in the contract. It requires notice under specification 104.06 as a prerequisite to the submission of a claim. It also requires the engineer to respond under specification 104.06 and the contractor to cooperate with the engineer to resolve the issue.

**15.** A change order is a written order by the Authority's engineer increasing or decreasing the contract quantities or adding or altering the contract plans or specifications, and establishing the basis of payment and time adjustments for the work affected by the changes. Specification 101.14.

**16.** See the appendix to this opinion for the full text of specification 105.19.

¶ 23 The contractor may invoke the multi-tiered review under specification 105.19 only if the contractor gave timely notice of the claim either before or when the alleged additional costs are incurred, for example, within five days from the start of a delay under specification 108.07(d) or within ten days after notice to resume suspended work under specification 104.05(a). Specification 105.19, Subsection 1(a). Further, the contractor may invoke the multi-tiered review under specification 105.19 only if the contractor timely submits a detailed statement of the claim to the chief engineer within thirty days after all of the contractor's costs have been incurred. Specification 105.19, Subsection 1(b).

¶ 24 We find the language prescribing this multi-tiered review procedure in specification 105.19 to be free of ambiguity. "A contract is ambiguous if it is reasonably susceptible to at least two different interpretations." *Pitco Prod. Co.*, 2003 OK 5, at ¶ 14, 63 P.3d at 544–545. The language in specification 105.19 is not susceptible to differing interpretations. In plain and ordinary language, specification 105.19 provides for 1) the chief engineer to review and settle a contractor's claim, 2) the deputy director to review and settle with the contractor, 3) voluntary mediation of the claim, and 4) suit on the contract claim in the district court.

¶ 25 Further, reading specification 105.19 with other pertinent specifications does not create ambiguity. We reviewed the specifications requiring a contractor to give notice of claims for additional compensation or time in part V, *supra*. In plain language, specification 105.19 requires compliance with the notice requirements in those specifications.

¶ 26 We now turn to the meaning and effect of specification 105.19. The Authority contends that the notice of claim and the claim requirements in specification 105.19 are conditions precedent to its liability and that its potential liability in the district court is limited to the amount the contractor claimed before the Authority. M.J. Lee counters that any interpretation of the specifications to limit the damages it may recover in a judicial proceeding for breach of contract is contrary to the Okla. Const., art. 23, §§ 8 [17] and 9 [18] and 15 O.S.2001, § 216. [19]

¶ 27 A condition precedent is an act that must be performed on one side before an obligation arises on the other side; the obligation on one side is dependent on the performance of some act on the other side. *Rollins v. Rayhill*, 1948 OK 83, ¶ 14, 191 P.2d 934, 937. In arguing that the claim amount is a condition precedent to its liability, the Authority relies on the following language in specification 109.10: "Strict compliance with the **provisions of this Subsection** will be an essential condition precedent to any equitable adjustment for delays." (Bold added.) This reliance is misplaced. Specification 109.10 lists the specific items that may be included in any equitable adjustment for delay (direct labor costs, material and equipment costs, and overhead costs) and the specific items that must be excluded (loss of profits, consequential damages, indirect costs, and attorney fees). The strict-compliance language in specification 105.10 is a restriction on the items of cost to be considered in calculating costs of delay not occasioned by the engineer suspending the work. It cannot be read to cap the Authority's liability at the amount claimed by the contractor.

¶ 28 Further, the plain language in specification 105.19 contemplates change in any amount of additional compensation that might be claimed by the contractor. Subsection 1(b) of the specification requires the

17. Okla. Const., art. 23, § 8 reads: "Any provision of a contract, expressed or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be null and void."

18. Okla. Const., art. 23, § 9 reads: "Any provision of any contract or agreement, express or implied, stipulating for notice or demand other than such as may be provided by law, as a condition precedent to establish any claim, demand, or liability, shall be null and void."

19. 15 O.S.2001, § 216 reads: "Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals, or which limits the time within which he may enforce his rights, is void."

contractor to open its records to the engineer and provide additional information as may be requested by the engineer. Similarly, subsection 2(b) of the specification permits the deputy director to determine if additional information is required from the contractor. In the same vein, specification 108.07(e) provides that the Authority's records will be considered conclusively accurate where the contractor fails to reconcile its records of delay costs with the Authority's records.

¶ 29 In arguing that the contractor's notice of claim is a condition precedent to its liability, the Authority relies on the language "written notice is jurisdictional" in specification 105.19, subsection 1(a). Again, the Authority's reliance is misplaced. The word "jurisdiction" means 1) administering justice and 2) authority or its range; and, synonyms for "jurisdiction" include authority, range, supervision, and control. *Webster's New World Dictionary and Thesaurus* (1996). As previously discussed, specification 105.19 prescribes a multi-tiered review procedure which the contractor may invoke with a timely-filed claim **only if** the contractor gave timely notice of the claim either before or when the alleged additional costs are incurred. The phrase "written notice is jurisdictional" in specification 105.19 pertains to the multi-tiered settlement procedure. It means that the contractor may not invoke the engineer's and the deputy director's review and settlement authority delegated in specification 105.19 [20] if the contractor failed to give the required written notice. The phrase "written notice is jurisdictional" cannot be read as a condition precedent to the Authority's liability.

¶ 30 Further, we agree with M.J. Lee's argument that a construction of any of the notice of claim provisions to be a condition precedent to the Authority's liability would void the provision. The Okla. Const., art. 23, § 9 renders null and void any provision in a contract requiring, after a breach of duty and as a condition precedent to establish liability, notice "other than as may be provided by

law." *McDonald v. Amtel, Inc.*, 1981 OK 78, ¶ 14, 633 P.2d 743, 745–746. The 1999 Standard Specifications for Turnpike Construction do not fall within the exclusionary language "other than as may be provided by law." They are not state agency regulations nor do they otherwise constitute a part of the law of this state. The specifications are, at most, adhesion contract clauses, which must be construed consistent with the laws of this state.

¶ 31 Finally, we find no merit in M.J. Lee's argument that any specification limiting the amount of damages it may recover for breach of contract is void under the Okla. Const., art. 23, § 8. Compensation over and above the contract price for performance of a public highway construction contract is not a constitutional benefit protected from waiver in Okla. Const., art. 23, § 8. *See Rollings v. Thermodyne Indust., Inc.*, 1996 OK 6, 910 P.2d 1030. We also find no merit in M.J. Lee's argument that any specification restricting it from enforcing its rights under the contract by the usual legal proceedings in the ordinary tribunals is void by operation of 15 O.S.2001, § 216. The specifications clearly provide review procedures for M.J. Lee to establish a right to compensation not covered by the contract, rather than restrict M.J. Lee from enforcing a right.

¶ 32 The steps prescribed in the specifications for a contractor to claim additional compensation and/or time are not acts that must be performed before the Authority has any liability exposure. Under the specifications, the Authority's potential liability is not dependent on the contractor's notice of claim or the claim. Instead, the Authority's potential liability for compensation over and above the contract price arises when the engineer acts so as to cause or allow unreasonable delay of the contractor's work or to add or alter the contractor's work. Under the specifications, the contractor's failure to give timely notice of a claim may waive the claim, a defense which the Authority must

20. Although highway construction contracts are awarded by the Authority, the claims procedures prescribed in the Authority's specifications delegate power to the chief engineer to agree to certain changes in the contract price or time, such as an adjustment for suspended work in specification 104.05 or an adjustment for delay in specification 108.07 and to the chief engineer and the deputy director in specification 105.19.

plead. *Albert & Harlow, Inc. v. Fitzgerald,* 1964 OK 42, ¶ 15, 389 P.2d 994, 997.

■ ¶ 33 We are disinclined to construe contract provisions as conditions precedent unless compelled by the plain language of the contract. *McAtee v. Wes–Lee Corporation,* 1977 OK 130, ¶ 6, footnote 1, 566 P.2d 442, 444. We find no language in specification 105.19 that compels us to construe the notice of claim or the claim as a condition precedent to the amount of additional compensation that a contractor may seek in a contract action in the district court. Accordingly, we conclude that the notice of claim and the claim required in specification 105.19 are not conditions precedent to the Authority's liability and the amount of damages a contractor may seek to recover in the district court is not limited to the amount claimed before the Authority.

¶ 34 We observe that a highway construction contractor's compensation over and above the contract price is not without limitation. First, specification 108.07(e) caps delay costs at the amount established in the Authority's records where the contractor fails to reconcile its records of delay costs with the Authority's records. Second, public finance statutes cap the amount to be paid pursuant to a change order to a public construction contract over One Million Dollars, as the one here, to the greater of One Hundred Fifty Thousand Dollars or ten percent cumulative increase in the original contract amount. 61 O.S.2001, § 121(B).[21] Governing statutes are incorporated into the contract, and the contract will be construed consistent with the statutes. *Okla. Cotton Growers' Association v. Salyer,* 1925 OK 945, 243 P. 232; *East Central Okla. Elec. Co-op., Inc. v. Public Serv. Co.,* 1970 OK 80, 469 P.2d 662; *Welty v. Martinaire of Okla., Inc.,* 1994 OK 10, 867 P.2d 1273.

■ ¶ 35 We now turn to the items of expense that a contractor may seek to recover as damages in the district court. The record before us contains M.J. Lee's notice of a claim for additional compensation for delay costs filed after it received the engineer's notice to resume suspended work, seemingly filed in accordance with specification 104.05, and M.J. Lee's claim, seemingly filed in accordance with specification 105.19. The claim for delay costs in the amount of $649,318.89 was unsuccessfully pursued through the multi-tiered claims settlement procedure in specification 105.19 before suit was filed in the district court. M.J. Lee increased the monetary amount of its claim for additional compensation in the district court. We have concluded the increase is not prohibited by the terms of the contract. On appeal, M.J. Lee contends that it is entitled to seek damages for 1) changes in character of work caused by interference, disruption, and lack of coordination, 2) suspension of work, and 3) delays of work. On the record before us, we can not agree with M.J. Lee.

¶ 36 The steps to be taken by a contractor to preserve a claim for additional compensation due to delay in work, suspension of work, and altered or extra work or change in character of work are set out in separate specifications. The requirements are different: for instance, notice of a claim based on delay must be given within five days of the delay, notice of a claim based on suspended work must be given within ten days after receipt of the notice to resume work, and notice of a claim based on change of character of work must be verbally given before performing the work and followed with a written notice. The specifications do not suggest or imply that a single notice of claim will preserve all claims. A notice of claim under specification 104.05 for suspension of work will not preserve a claim for delays not occasioned by the suspension or a claim for extra or altered work or change in character of work. M.J. Lee may not include costs for delay where the work was not suspended or costs for change in character of work in its claim based on suspension of work for an unreasonable period.

---

**21.** 61 O.S.2001, § 121 deals with change orders or addendums for extra work. M.J. Lee vaguely asserts that the Authority changed the nature of the work to be performed under their contract, but there is no change order issued by the Authority in the record before us. The text of § 121(B) is a special provision to the contract at issue, and any change order would be capped at 10% of the contract price of $3,847,229.82.

¶ 37 The specifications clearly require a contractor to give separate notices of claims for each and every basis upon which it seeks additional compensation. Separate notice of each claim allows for early evaluation of the claim by the engineer and assures that any increase in the contract price or time will be immediately documented. It also allows the Authority to control increases in highway construction costs and avoids abuse in the expenditure of public highway funds.

¶ 38 The specifications require the contractor to give notice of a claim and to itemize all costs included in a claim for additional compensation and require the Authority, its engineer and deputy director, to fully and fairly review the claim and give detailed explanation and/or decision on the claim. These specifications satisfy state contract principles and federal highway aid requirements.[22] Where the contractor does not comply with the specifications, the claim will be denied. Where the engineer or deputy director does not comply with the specifications,[23] the court will determine the adjustment that should be made to the contract as proven in accordance with the specifications.

## VII. Conclusion

 ¶ 39 In conclusion, specification 105.19 is free of ambiguity and its meaning is clear. Where additional costs over and above the contract price have been incurred, the contractor may file a claim with the engineer for additional compensation under specification 105.19. The contractor must have given written notice of claim to the engineer as required by the specification allowing additional compensation for 1) delay in work, 2) unreasonable suspension of work, 3) altered or extra work, or 4) change in character of work. A separate notice must have been given within the time allowed in the applicable specification for each basis of the claim, and the claim must explicitly state each basis upon which additional compensation is sought. A notice of claim and a claim on each basis for additional compensation are prerequisites to recovering damages on that basis in the district court. However, specification 105.19 does not limit the amount of damages that may be awarded. Accordingly, M.J. Lee may be awarded damages for additional compensation allowed, preserved, and proven in accordance with the applicable specifications even if the amount of damages is greater than the amount claimed before the Oklahoma Transportation Authority.

¶ 40 The record shows M.J. Lee gave notice of claim and submitted a claim to the Authority for delay costs due to suspension of work for an unreasonable period of time.

---

**22.** *State Highway Comm'n v. Green–Boots Const. Co.*, 1947 OK 221, 187 P.2d 209, teaches: 1) where the contract requires written approval before performing the work, the contractor's claim will be denied without proof of written approval prior to performing the extra work; 2) where the contract provides for an audit of the contractor's claim, the public agency must complete a thorough audit; and 3) where the contract provides for arbitration, the public agency must accord the contractor a full and fair hearing.

**23.** The parties have not advised whether this bridge project may be eligible for federal highway aid. However, we note that Oklahoma turnpikes are designated as federal highways. Federal highway aid is distributed on a pay-as-you-go system that reimburses the cost of construction to the state agency or public entity charged with the responsibility for highway construction. *In the Matter of the Application of the Okla. Dept. of Transp.*, 2003 OK 105, ¶ 18, 82 P.3d 1000, 1006. The Federal Highway Administration determines on a case-by-case basis whether federal highway aid will participate in a contract claim award made by administrative decision, arbitration,

court judgment or negotiated settlement. 23 C.F.R. § 635.124(a). Generally, federal funds will participate to the extent that the contract adjustments are supported and have a basis in the terms of the contract and applicable state law in accordance with prevailing principles of public contract law. *Id.* The Federal Highway Administration expects the state agency to diligently pursue satisfactory resolution of the claims within a reasonable period of time. 23 C.F.R. § 635.124(b).

In requesting federal highway aid participation, the state agency must provide a written statement setting forth the factual and legal basis of the claim together with cost data and other facts supporting the award or settlement; the state agency's audit of the actual costs incurred by the contractor; and if there is a complex or novel legal issue, a legal opinion setting forth the basis for determining the extent of liability under local law. 23 C.F.R. § 635.124(c). Federal funds will not participate in costs that result from delays caused by dilatory actions of the state agency or the contractor. 23 C.F.R. § 635.124(f).

To recover damages on this basis on remand to the district court, M.J. Lee must prove 1) the engineer suspended M.J. Lee's work, 2) the work was suspended for an unreasonable period of time, and, 3) M.J. Lee's costs claimed for the unreasonable period of suspension are allowed under the applicable specification as recoverable damages. If the Authority presents a waiver defense under the specifications, it must prove that M.J. Lee 1) failed to timely give notice of claim based on the suspension or 2) failed to timely file the claim after project completion.

¶ 41 The appellate record does not demonstrate that M.J. Lee preserved any claim against the Authority for additional compensation on any basis other than suspension of work. M.J. Lee may not recover damages on any other basis unless it timely gave notice of claim on each separate basis and timely filed a claim on each separate basis with the Authority.

**CERTIFIED INTERLOCUTORY ORDER VACATED; CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

WATT, C.J. and LAVENDER, EDMONDSON, TAYLOR and COLBERT, JJ., concur.

OPALA and KAUGER, JJ., concur in part and dissent in part.

WINCHESTER, V.C.J., and HARGRAVE, J., dissent.

### *APPENDIX TO OPINION*

### 105.19. NONBINDING PROCEDURE FOR CLAIM SETTLEMENT

*SECTION 1*

(a) If the Contractor wishes to file a claim in accordance with the Standard Specifications, notification must be done in writing and in the time limits specified in the section of the Standard Specification or Special Provision relating to the claim. Such written notice shall be submitted to the Chief Engineer. The filing of the written notice is jurisdictional. If written notice as is provided for herein is not given to the Chief Engineer within the period provided, the Contractor waives all claims for extensions of time or additional compensation.

The term day(s) shall mean calendar day(s) unless otherwise specified.

(b) As promptly as possible following the submission of a notice of claim, in accordance with Subsection (a) of this Section but in no event later than thirty (30) days after all of the Contractor's costs have been incurred, the Contractor shall submit in person or by certified mail a detailed statement of the Contractor's claim to the Chief Engineer. The claim submission shall include all documentation in support of the Contractor's claim which shall set forth clearly and in detail, for each item of additional compensation or extension of time requested, the reasons for the claim, references to applicable provisions of the specification, the nature and the specific cost ascribed to each element of the claim or for each period of time involved, the basis used in ascribing each such element of cost or for each such period of time, and all other pertinent factual data. Cost data shall be submitted on the latest edition of the Authority's form entitled "Cost Breakdown for Support of Supplemental Agreement."

If requested in writing, the Contractor shall give the Authority access to any records relating to the compensation request, and if requested shall furnish copies thereof. A request for records access and/or copies of records shall extend the time permitted for the review by the Authority as hereinafter set forth, by the time necessary for the Contractor or refusal to submit such information and details will be sufficient cause for denying all or part of the request for additional compensation or time.

(c) The Chief Engineer will make a written response to the Contractor's request for additional compensation or time after a review of the request, which shall occur within the following time periods.

1. Ninety (90) calendar days from the receipt of the Contractor's claim (and the expiration of any extension for the Contractor to provide all updated factual data and information), for claims in the amount of two hundred fifty thousand dollars ($250,000) or less;

2. One hundred eighty (180) calendar days from the receipt of the Contractor's claim (and the expiration of any extension for the Contractor to provide all updated factual data and information), for claims in the amount of more than two hundred fifty thousand dollars ($250,000).

The Chief Engineer and the Contractor may agree in writing to extensions of time set forth in c. 1 and c. 2 of this subsection.

If agreement is not reached between the Contractor and the Authority within the Authority's period of review, as set forth in c. 1 and c. 2 of this Subsection and any extensions thereof, nor any response issued by the Authority, the claim shall be deemed completely denied and the Contractor may appeal the denial of his claim to the Deputy Director of the Authority as provided in Section 2 hereof.

### SECTION 2

(a) In the event that a Contractor's claim is denied in whole or in part by the Chief Engineer, the Contractor may appeal this denial to the Deputy Director of the Authority by forwarding a copy of his claim in person or by certified mail with all supporting documents, any written agreement concerning the claim, and a statement setting forth in detail the grounds upon which the Contractor appeals the Chief Engineer's decision to the Deputy Director of the Authority within twenty (20) says [sic] of the denial of the claim. If appeal is not submitted within this time frame, the decision of the Chief Engineer shall become final.

(b) Upon receipt of the appeal and all documents set forth in Subsection (a) of this section, the Deputy Director of the Authority shall review the Contractor's claim and determine if additional documentation, information, or other factual date are required to make final decision on the Contractor' [sic] claim. If additional information is required, the Deputy Director of the Authority shall, within fifteen (15) days, notify the Contractor in writing stating what additional information is required. Within forty-five (45) days of receipt of the requested additional information, or if additional information is not requested within forty-five (45) days of the receipt of the appeal, the Deputy Director of the Authority may dispose of the claim by supplemental agreement in accordance with Section 104.03 of the Standard Specification. If no agreement is executed between the Authority and the Contractor within the forty-five (45) days, the Deputy Director of the Authority within five (5) days thereafter shall issue a decision on each item of the Contractor's appeal, whether the item is approved in whole or in part, or disapproved. The Deputy Director's decision shall be mailed to the Contractor by first class mail. In the event that the Deputy Director of the Authority shall fail to issue a decision in the time provided in this section and any extensions agreed to in writing by the Authority and the Contractor the claim shall be deemed denied as to any matter not previously agreed to in writing and the Contractor may proceed with his claim as set forth in Section 3.

### SECTION 3

(a) If the Contractor is dissatisfied with the final decision of the Deputy Director, the Contractor may request mediation of his claim in accordance with January 1, 1992 Edition of the Construction Industry Mediation Rules of the American Arbitration Association, as such rules are herein modified. A request for mediation shall be made within fifteen (15) days of the receipt of the Deputy Director's final decision

(b) The Construction Industry Mediation Rules of the American Arbitration Association as applicable to Contractor's claims resulting from Contracts with the Authority are modified and amended as follows:

1. Rule 2 of the Mediation Rules is amended to read as follows:

*Initiating of Mediation.*

The Contractor may initiate mediation by filing a written request for mediation with the Dallas Regional Office of the American Arbitration Association, and by sending a copy of the request to the Deputy Director of the Authority. The request for mediation sent to the American Arbitration Association shall be accompanied by the appropriate administrative fee as set forth in the Fee Schedule.

2. Rule 8 of the Mediation Rules is amended to read as follows:

*Date, Time, and Place of Mediation.*

The mediator shall fix the date and time of each mediation session. The mediation shall be held at the Oklahoma Turnpike Authority Building in Oklahoma City, Oklahoma, or at any other convenient location agreeable to the mediator and the parties.

## SECTION 4

If mediation has been terminated in accordance with Rule 14 of the Construction Industry Mediation rules, and the Contractor wishes to further pursue his claim, the Contractor may pursue his claim in District Court in Oklahoma County.