2012 OK CIV APP 33

**FERGUSON ADVISORS, LLC,**
**Plaintiff/Appellee,**

v.

**Earl F. MALHERBE, Jr., and Highlander Apartments, LLC, Defendants/Appellants.**

No. 109,057.

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 16, 2011.

Rehearing Denied Dec. 22, 2011.

Certiorari Denied March 6, 2012.

J. John Hager, Jr., The Law Office of J. John Hager, P.C., Edmond, Oklahoma, for Plaintiff/Appellee.

William R. Burkett, Oklahoma City, Oklahoma, for Defendants/Appellants.

JOHN F. FISCHER, Vice–Chief Judge.

¶1 Earl F. Malherbe, Jr., and Highlander Apartments, LLC, (collectively, Malherbe), appeal the summary judgment entered by the district court in favor of Ferguson Advisors, LLC. This appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S. Supp. 2009, ch. 15, app. 1, and the matter stands submitted without appellate briefing. Because Ferguson is not entitled to judgment as a matter of law, we reverse and remand for further proceedings.

## BACKGROUND

¶2 The facts in this case are not in dispute and are determined from the summary judgment materials and other pleadings. Earl F. Malherbe is the sole owner of Highlander LLC. Highlander owned Ashwood Place Apartments. Malherbe employed Ferguson as its real estate broker in connection with the sale of Ashwood Place to O'Malley's Property Management. The employment agreement called for Ferguson to be paid five percent of the sales price. The property was sold for $875,000, and Ferguson's commission on the sale was $43,750. O'Malley's paid $50,000 at the closing and the $825,000 balance of the purchase price was financed by Malherbe, who took a mortgage to secure payment of that amount. At the closing, Ferguson wrote a letter to Malherbe agreeing to delay payment of $13,755.82 of its commission "until such time as O'Malley's Property Management repays the $825,000 seller-finance in full." The $825,000 was not

paid and after O'Malley's deeded the property back to Malherbe in lieu of foreclosure, Ferguson filed suit. Both parties sought summary judgment. Malherbe appeals the district court's judgment granting Ferguson's motion.

## STANDARD OF REVIEW

¶3 Rule 13 of the Rules for District Courts of Oklahoma, 12 O.S. Supp.2009 ch. 2, app., governs the procedure for summary judgment in the district court. We review the district court's grant of summary judgment *de novo. Carmichael v. Beller,* 1996 OK 48, ¶2, 914 P.2d 1051, 1053. On review, we examine the pleadings and evidentiary materials submitted by the parties to determine whether there exists a genuine issue of material fact. *Id.* This Court bears "an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant." *Copeland v. The Lodge Enters., Inc.,* 2000 OK 36, ¶8, 4 P.3d 695, 699. In reviewing an order granting summary judgment, the appellate court is limited to the record before the district court. *Northrip v. Montgomery Ward & Co.,* 1974 OK 142, 529 P.2d 489. "Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Davis v. Leitner,* 1989 OK 146, ¶9, 782 P.2d 924, 926.

## ANALYSIS

¶4 The dispositive issue in this appeal is whether Ferguson's agreement to delay payment of a portion of its commission defeated its entitlement to that portion of the commission. As phrased by Malherbe: "Was the payment of the balance of the purchase price by the buyer of the apartment complex a condition precedent to payment of the $13,755.82 to [Ferguson]?"[1] Neither a real estate commission contract, nor the real es-

---

1. The only other issue raised by Malherbe concerns interest on the unpaid portion of the commission. Because of our disposition of the first issue, it is not necessary to address the second issue raised by Malherbe.

tate purchase contract referenced in Ferguson's letter was made part of the record on appeal. Nonetheless, Malherbe agrees Ferguson was to be paid a commission in the amount of five percent of the purchase price, or $43,750, and Ferguson's letter to Malherbe confirms that fact. The letter states in its entirety:

> Pursuant to the Real Estate Purchase Contract dated March 14, 2003, Ferguson Advisors LLC is to be paid 5% of the sale price of Ashwood Place Apartments, 1407 W. Highland, Ponca City, OK., $43,750, upon closing. In order to effect that closing and satisfy the wishes of both Buyer, O'Malley's Property Management and Seller, Earl F. Malherbe, Jr., Ferguson Advisors LLC has agreed to delay payment of $13,755.82 in real estate commission earned until such time as O'Malley's Property Management repays the $825,000 seller-finance in full. At that time, you have agreed and acknowledge herein to pay Ferguson Advisors LLC the remaining balance of $13,755.82 due pursuant to the contract and its "Exhibit A" Addendum to Real Estate Purchase Contract.

The letter was signed by C. Edward Noyes on behalf of Ferguson and acknowledged by Earl F. Malherbe, Jr. Other evidence in the record supports this version of the agreement as well.

¶ 5 The Commercial Mortgage and Security Agreement between O'Malley's and Malherbe states that the maturity date for the Commercial Loan Agreement executed in conjunction with this mortgage was October 1, 2004, eighteen months after the April 1, 2003 closing. The settlement statement documenting the closing provides that the $13,755.82 was one of the "seller paid closing costs." The commission section of the settlement statement calculates the commission at five percent of the $875,000 sales price equaling $43,750, of which $29,994.18 was paid to C. Edward Noyes at closing from the "seller's funds." According to the settlement statement, the remaining $13,755.82 of the commission was to be paid outside closing "BY SELLER UPON REFINAN [sic]."

¶ 6 It is undisputed that O'Malley's did not pay the note according to its terms or any of the purchase price beyond the $50,000 paid at closing. Ferguson argues that its letter merely set the date for payment of the $13,755.82 and did not condition receipt of that payment on O'Malley's payment or refinance of the Malherbe loan. In support of its argument, Ferguson relies on *DeCarlo and Doll, Inc., v. Dilozir*, 45 Conn.App. 633, 698 A.2d 318 (1997). In *Dilozir*, an engineering firm was hired to help prepare a site plan for a developer. The agreement included a fee schedule but was subsequently amended by a letter agreement. The letter agreement increased the budget for part of the work and provided that it was to be paid in full with all outstanding payments at the time of financing. When the developer failed to obtain financing and refused to pay the balance due pursuant to the contract, the firm sued. The court held the letter agreement did not amend the fee schedule in the original contract but only set the date by which the increased budget amount was to be paid. We find *Dilozir* distinguishable because the subsequent agreement here did impose a condition on Malherbe's original duty to pay the $13,755.82.

¶ 7 Malherbe argues that the payment of the $825,000 "in full" was a condition precedent on the obligation to pay the $13,755.82. "A condition precedent is an act that must be performed on one side before an obligation arises on the other side; the obligation on one side is dependent on the performance of some act on the other side." *M.J. Lee Constr. Co. v. Okla. Transp. Auth.*, 2005 OK 87, ¶ 27, 125 P.3d 1205, 1213. Here, the obligation to pay Ferguson's commission was fixed as of the date of closing.

> In the absence of a stipulation to the contrary between the broker and the vendor, it is the general rule that the broker is entitled to his commission if, acting in good faith, he procures a purchaser willing, able, and ready to take the property upon the terms offered by the vendor.

*Eastern Okla. Land & Cattle Co. v. Dorris*, 1976 OK 50, ¶ 8, 549 P.2d 78, 80. However, subsequent to the formation of the brokerage contract, Ferguson agreed to delay receipt of a portion of that payment until O'Malley's paid "the $825,000 seller-finance in full." Al-

though conditions on contractual duties are not favored, *M.J. Lee Constr.*, 2005 OK 87, ¶ 33, 125 P.3d at 1215, "[t]he right of a real estate broker to recover a commission for his services depends upon the contract between the vendor and the broker." *Dorris*, 1976 OK 50, ¶ 7, 549 P.2d at 79–80.[2] Therefore, the legal effect of Ferguson's agreement to delay payment of a portion of the commission determines its entitlement to the $13,755.82.

¶ 8 According to the Restatement (Second) of Contracts § 224 (1981): "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." As provided in Comment "c" to section 224, to be a condition, the agreement must qualify a duty imposed by an existing contract. Oklahoma follows this view. *See Rollins v. Rayhill*, 1948 OK 83, ¶ 14, 200 Okla. 192, 191 P.2d 934, 937 (recognizing that a condition is an act or event occurring after the formation of the contract and on the occurrence of which the obligation of the contract depends). The agreement to delay payment of the $13,755.82 qualified Malherbe's duty pursuant to the brokerage agreement to pay the full $43,750 commission at the time of closing. Section 225 of the Restatement of Contracts provides:

(1) Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused.

(2) Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.

(3) Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur.

As previously stated, it is undisputed that O'Malley's did not pay the $825,000 in full and is now incapable of doing so. Therefore, Malherbe's duty to pay the $13,755.82 was discharged unless O'Malley's non-payment was excused or Malherbe had some duty regarding the condition.

**2.** *Cf.* 12 C.J.S. Brokers § 218 (noting that the right to real estate commissions may be made

¶ 9 There is no evidence to support the conclusion that payment of the $825,000 was excused. As to any duty of Malherbe regarding the payment of the $825,000, section 227(2) provides guidance. Generally, a duty will not be imposed unless the event that is the subject of the condition is within the control of the obligee. In *Dilozir*, the developer controlled the refinancing. Here, however, payment of the $825,000 was in the control of O'Malley's, not Malherbe. As relevant to this case, illustration 4 to section 227 of the Restatement demonstrates this principle.

A contracts to sell and B to buy land for $100,000. At the same time, A contracts to pay C, a real estate broker, as his commission, $5,000 "on the closing of title." B refuses to consummate the sale. Absent a showing of a contrary intention, a court may conclude that C assumed this risk, and that A's duty is conditional on the sale being consummated. A is then under no duty to pay C.

The facts in this case suggest that Ferguson assumed the risk that O'Malley's would not pay the $825,000. Although it was entitled to the full commission at closing, from Ferguson's letter it does not appear that the closing would have occurred unless Ferguson agreed to defer payment of a portion of the commission. Further, receipt of $29,994.18 of the commission, whether O'Malley's paid the $825,000 or not, provided consideration for Ferguson's agreement to defer the remaining portion of the commission and condition receipt of that payment on O'Malley's payment of the $825,000 "in full."

¶ 10 A similar result was reached in *Amies v. Wesnofske*, 174 N.E. 436, 255 N.Y. 156 (1931). There, the brokerage agreement called for the payment of a $5,000 commission, "one-half of which is paid this date and the balance to be paid on the closing of title." *Id.* at 436, 255 N.Y. at 158. The date set for closing was extended by the buyer and seller and eventually the buyer and seller agreed that the seller could keep the earnest money and the buyer would be released from the

dependent on payment of the purchase price).

contract. The court found that the payment of the second $2,500 was conditioned on an event that did not occur. Therefore, the seller was not required to pay the balance of the commission. We find this case persuasive, more on point than *Dilozir*, and consistent with Oklahoma law.

> Where the [brokerage] contract is in writing and provides that the vendor will pay the broker a stipulated commission when the sale is completed, the broker is not entitled to recover where the sale was not consummated in the absence of a showing that the failure to complete the sale was caused by the fault of the vendor.

*Dorris*, 1976 OK 50, ¶ 7, 549 P.2d at 80. Here, although the sale was consummated, the parties agreed to condition payment of a portion of the commission on O'Malley's payment of the $825,000. We find nothing in this record to support the conclusion that Malherbe undertook any duty regarding O'Malley's payment of the $825,000.

▮ ¶ 11 Ferguson also argues that Malherbe prevented performance of the payment of $825,000 based on the following facts. On March 3, 2004, O'Malley's executed a warranty deed conveying the property to Global Property Investments, LLC. According to Earl Malherbe's affidavit, the property was subsequently deeded by O'Malley's to Concept Ventures, LLC, an entity of which Earl Malherbe is the sole owner. On May 12, 2004, Malherbe assigned the O'Malley's mortgage to a bank. Earl Malherbe states in his affidavit that the mortgage was assigned "as security for a loan not related to the subject matter of this suit; that Highlander received no payment of any kind in this transaction, and no payment credited on the O'Malley's loan." Ferguson in essence contends that by accepting a deed to the property instead of pursuing foreclosure, Malherbe prevented O'Malley's from satisfying the condition.

▮ ¶ 12 Legal support for Ferguson's argument is found in section 230 of the Restatement of Contracts, which provides that a duty subject to a condition is not discharged if the obligor acted in bad faith. However, if facts exist showing bad faith on the part of Malherbe, they are not contained in this rec-

ord. Further, the *Amies* court states the general rule:

> a vendor is under no duty to his broker to enforce specific performance by the vendee, when commissions are conditioned upon performance; that the vendor may accept forfeiture by the vendee, retain the down payment made, and not become liable thereby to pay his broker.

*Amies*, 174 N.E. at 438, 255 N.Y. at 163.

▮ ¶ 13 Finally, Ferguson argues that cancellation of the O'Malley's mortgage should be treated as equivalent to payment of the $825,000 because Malherbe received property equivalent in value to the $825,000. The language of the letter is explicit. Ferguson "agreed to delay payment of $13,755.82 in real estate commission earned until such time as O'Malley's Property Management repays the $825,000 seller-finance in full." If this language was intended to apply to any circumstance other than payment of $825,000 to Malherbe, evidence of that intent must be found elsewhere.

> Where, from an examination of a written contract in its entirety, the intent of the parties thereto is obscure and uncertain, resort may be had to parol evidence to show the situation of the parties, circumstances surrounding the execution of the contract and the negotiations preceding and leading up to the making of the agreement in order to arrive at the contract's true intent and meaning.

*Public Serv. Co. of Okla. v. Home Builders Ass'n of Realtors, Inc.*, 1976 OK 120, ¶ 7, 554 P.2d 1181, 1185. The interpretation urged by Ferguson is one that must be made or rejected, in the first instance, by the district court. *Krosmico v. Pettit*, 1998 OK 90, ¶ 22, 968 P.2d 345, 351 (appellate courts do not make first instance rulings on questions of law). The interpretation of clear, unambiguous contract language is a question of law for the court. *Mercury Inv. Co. v. F.W. Woolworth Co.*, 1985 OK 38, 706 P.2d 523. Whether a contract is ambiguous requiring extrinsic evidence is also a question of law for the court. *Ferrell Constr. Co., Inc. v. Russell Creek Coal Co.*, 1982 OK 24, 645 P.2d 1005. Ferguson's argument based on this

proposed interpretation can be raised and addressed on remand.

### CONCLUSION

¶ 14 From this record, it appears that prior to or in conjunction with the execution of a contract for the sale of the Ashwood Apartments, Ferguson and Malherbe entered into a contract by which Ferguson was to be paid a real estate commission. However, in order to consummate the closing, Ferguson agreed to defer payment of a portion of its commission until the buyer paid the balance of the purchase price. That condition qualified Malherbe's duty to pay the balance of the commission and did not occur. Consequently, Ferguson has not established as a matter of law that Malherbe became obligated to pay the balance of the commission. This issue remains to be resolved. Therefore, summary judgment was not proper. We reverse the judgment of the district court and remand this case for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

BARNES, P.J., and WISEMAN, J., concur.